MARY MULLINS, Respondent. *v.* SIEGEL-COOPER COMPANY, Appellant.

1. NEGLIGENCE — LIABILITY OF ABUTTING OWNER FOR DANGEROUS CONDITION OF SIDEWALK. CAUSED BY INDEPENDENT CONTRACTOR. While it is the general rule that the owner of property is not liable for the negligent acts of an independent contractor with whom he has an agreement for the prosecution of work, yet if the work itself creates the danger or injury, then the ultimate superior or proprietor is liable to persons injured by a failure to guard or protect the work, even though the work is intrusted to an independent contractor; and where there is evidence that the dangerous condition of a sidewalk in front of certain premises was caused solely by the wagons of independent contractors, employed by the owner to do certain work upon the premises and to do carting therefrom, so that it is clear that the work itself created the unsafe condition of the sidewalk, whereby a person walking thereon was injured, the owner of the premises is liable for such injury.

2. SAME — WHAT CONSTITUTES DANGEROUS CONDITION OF SIDEWALK. Where it appears, in an action brought against the owner of premises abutting on a public and much traveled street, to recover for injuries received by falling over a defective sidewalk in an unlighted place, in front of the premises, that one flagstone rested upon another and was thereby raised three inches above the level of the walk, and that it was allowed to remain in this condition for a period of several months before the accident, such condition of the sidewalk constitutes such a dangerous situation, on a dark night, as to warrant a recovery by a person who stumbles and falls over the same, thereby receiving serious injury.

3. SAME — REQUEST TO CHARGE. Where the defendant upon the trial of such action requested the court to charge "that the defendant is not liable unless the plaintiff has shown by a fair preponderance of the proof

9

that the defendant or its agents caused the obstruction or contributed towards the cause of the obstruction or unevenness in the sidewalk over which the plaintiff claimed to have fallen," the court is justified in declining to charge in that language, since it only included the defendant or its agents and left out the element of independent contractor, especially where the court had already charged the request, in substance, with the addition of the element of the independent contractor.

4. SAME — EVIDENCE.    Where it was stipulated upon the record in the trial of such case that, previous to the accident, work and carting had been done upon the premises by independent contractors who furnished their own teams, wagons and employees, an objection against admitting the stipulation as evidence against the defendant, upon the ground that it had not been connected with the defendant and did not show that the defendant was in any way responsible for the acts mentioned in the stipulation, is properly overruled.

*Mullins* v. *Siegel-Cooper Co.*, 95 App. Div. 234, affirmed.

(Argued October 25, 1905 ; decided November 21, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 20, 1904, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Gordon Battle* and *Frederick E. Fishel* for appellant.    The testimony failed to show that the projection of the flagstone was caused by any act of the appellant, and the learned trial court erred in charging that there was some evidence that the appellant itself, or through its employees, caused the bad and defective condition of the sidewalk. (Leavitt on Neg. 114, § 130 ; *English* v. *Brennan,* 60 N. Y. 609 ; *Tremblay* v. *Harmony Mills,* 171 N. Y. 598 ; *City of Rochester* v. *Campbell,* 123 N. Y. 405 ; *Bieling* v. *City of Brooklyn,* 120 N. Y. 98 ; *Moore* v. *Gadsden,* 93 N. Y. 12.) The trial court erred in declining to charge that the defendant is not liable unless the plaintiff has shown, by a fair preponderance of the proof, that the defendant, or its agents, caused the obstruction, or contributed towards the cause of

the obstruction or unevenness in the sidewalk over which the plaintiff claims to have fallen. (*Mullins* v. *Siegel-Cooper Co.*, 95 App. Div. 234; *Bieling* v. *City of Brooklyn*, 120 N. Y. 98; *City of Rochester* v. *Campbell*, 123 N. Y. 405; *Tremblay* v. *Harmony Mills*, 171 N. Y. 598.)

*Warren C. Van Slyke* for respondent. The defendant is liable, irrespective of the question whether it caused the original defect or not. (*Babbage* v. *Powers*, 130 N. Y. 285; *Congreve* v. *Smith*, 18 N. Y. 79; *Sexton* v. *Zett*, 44 N. Y. 432; *Mathews* v. *De Groff*, 13 App. Div. 358; *Kennedy* v. *McAllister*, 31 App. Div. 456; *Mullins* v. *Siegel-Cooper Co.*, 95 App. Div. 237; *Trustees, etc.*, v. *Foster*, 156 N. Y. 354; *Downey* v. *Low*, 22 App. Div. 461; *Anderson* v. *Caulfield*, 60 App. Div. 560; *Spaine* v. *Stiner*, 51 App. Div. 485; *Jennings* v. *Van Schaick*, 108 N. Y. 532.) The defective and dangerous condition of the sidewalk constituted a nuisance. (*Wolf* v. *Kirkpatrick*, 101 N. Y. 151; *Ahearn* v. *Steele*, 115 N. Y. 203; *Jennings* v. *Van Schaick*, 108 N. Y. 532; *Swords* v. *Edgar*, 59 N. Y. 28; *Sturmwald* v. *Schreiber*, 69 App. Div. 476; *Murphy* v. *Leggett*, 29 App. Div. 312; *Tremblay* v. *Harmony Mills*, 171 N. Y. 599.) The charge as to the liability of the defendant for the acts of its contractors was correct and the requests to charge were properly denied. (*Downey* v. *Low*, 22 App. Div. 460; *Weber* v. *B. Ry. Co.*, 20 App. Div. 292; *Murphy* v. *Perlstein*, 73 App. Div. 256; *Johnson* v. *P. B. Co.*, 44 App. Div. 584; *Deeming* v. *T. Ry. Co.*, 49 App. Div. 493; 169 N. Y. 1; *Ramsey* v. *Nat. C. Co.*, 49 App. Div. 11; *Higgins* v. *B., Q. Co. & S. R. R. Co.*, 54 App. Div. 69; *Ann* v. *Herter*, 79 App. Div. 6.)

BARTLETT, J. This is a negligence action, in which the plaintiff seeks to recover damages of the defendant corporation, the Siegel-Cooper Company. The complaint alleges that at the times involved in this action the defendant was the owner of certain premises on Broadway, near Henderson

avenue, in West New Brighton, Richmond county (Staten Island), and that the defendant occupied and used the premises as a stable for its horses and wagons. This stable building is two stories high and built out to or very near the sidewalk line; on one side of this building there is a lane upon the premises of the defendant leading to the rear, where there is another stable.

At the time of the accident, March 16th, 1903, the entire frontage of the defendant, including the lane in question, was occupied by a sidewalk laid with flagging stones. During the summer of 1902, some months before the accident to the plaintiff, the flagging in front of the lane became disturbed and out of position by reason of heavily-laden wagons and trucks passing back and forth over the same on entering and leaving said premises.

It is charged in the complaint that the defendant "negligently, carelessly and knowingly" permitted the said unsafe condition of the sidewalk to remain without any effort to repair the same and make a safe passage for the public. The jury were justified by the evidence in finding that the unsafe condition of the sidewalk consisted of one flagstone overlapping the other and raised to a height of three inches above the level of the sidewalk.

The plaintiff, a woman in middle life, testified that the accident happened between the hours of seven and eight o'clock in the evening, and it was dark; that when reaching the point in question she stumbled and knocked her foot against the raised flagging, and, in trying to balance herself, moved the other foot against it also, and she was thrown heavily to the ground, suffering a broken wrist and other injuries. She further testified as follows: "That flagging was a little above the center of the driveway, in the driveway. I did not see what I fell over until I fell. Then I noticed some flagging. I think it was raised somewhere about two inches above the surface of the sidewalk. Whether it was simply overlapped or not I could not tell; I was in too much pain." On cross-examination she testified: "I was not walking so rapidly; not so very briskly; my

usual walk.   At this place where I fell, opposite this driveway, there was no light there at all."

The plaintiff's son was sworn and testified that he was in the opera house, the building next door to the stable, and was summoned to assist his mother.   He swore: "I subsequently examined the sidewalk, and I saw this flag was raised above another one at a height of about two or three inches; it was overlapping.   This stone was south of the middle gate in the driveway — right opposite this driveway — on the south side. I examined the stone closely that night; it was loose; when you put your foot on it it would give a rocking click or sound."   This witness further testified that at the time the stable building was erected the entire sidewalk in front was considerably broken up and a new flagging was thereafter laid in front of the stable and the lane.   He further testified : "I remember one morning of an occasion, during the month of July, 1902, seeing a wagon loaded with stone going into this lane.   I came over in that direction to take the car to go to my work, and I was walking down Broadway towards the opera house, and I was held up by a wagon crossing into that lane, a wagon filled with stone, and I saw the front wheels turn over a flagging and I saw the flagging on the south end come down and the front end raise up.   When the wagon went by, the stone fell back a little bit on to the other ahead of it.   *   *   *   I am in the vicinity every day.   I noticed whenever the wagon was going across that particular place, that when the wagon would go over it, it would raise the flag up and it kept getting worse all the time.   It got so that it would raise, I should judge, from two and one-half to three inches.   *   *   *   This particular flag was right in the wheel track.   They had to go over the edge of this flag, not over the raised end, the detached end.   Prior to March 16th, 1903, I have seen other people stumbling over this same flag.   From November up to the accident I have seen on Wednesday and Saturday nights maybe twenty-five or thirty people tripping over it."

A witness named Kenney was sworn for the plaintiff and

testified that he was the official stenographer of the Richmond County Surrogate's Court. He swore : " I am familiar with the condition of the sidewalk there, and was prior to March 16th, 1903, in front of the Siegel-Cooper premises. I saw a flagging on the southerly side of the driveway on the Siegel-Cooper Company's premises on Broadway extending on one end about two inches above the flag next to it ; probably about the latter part of November until some time in March, I noticed it first in November; about that time ; November or December. It projected on one end about two inches above the one adjoining it, the northerly side of the stone ; the other side was depressed." On cross-examination this witness testified : " I noticed people tumbling over it ; I had been walking along there before, sir ; I had not noticed it up to that time. * * * I saw people going to basket-ball games tumbling over it. I noticed it right up to the very night of the accident. I am a member of the fire company there ; a friend of Mr. Mullins ; I am not related to him ; just a friend ; that is all."

During the trial it was stipulated on the record as follows : " *First,* that the stone wall was built on the rear of the Siegel-Cooper premises during the month of June, 1902 ; said period of work on the stone wall took three weeks. *Second,* that the work on said wall was done and was performed by contractors under contract with the Siegel-Cooper Company, the contractors furnishing the materials, teams, wagons, and employing their own workmen. *Third,* that during the year 1901, from the time of the building of the stable and during the year 1902, and down to the present time, Siegel-Cooper Company have sold manure to various persons under contract, providing for their carting away such manure from the Siegel-Cooper Company premises in their" (the various contractors) " own wagons, drawn by their own employees ; and, on an average, there was one wagon so loaded up and driven out of said premises each week."

One Reilly was sworn as a witness for plaintiff and testified that he was a member of the engine company in the imme-

diate vicinity, and was also a member of the Young Men's Catholic Union, which met frequently in the opera house adjoining the stable. He testified : " I have seen wagons going in and out of this lane prior to March 16th. During the year of the construction of the wall in the rear of the stables of the Siegel-Cooper Company there were stone wagons, and also wagons loaded with cement. I have also seen some manure wagons going in and out, and I have also seen garbage wagons."

The defendant swore its stable manager, a hostler and a watchman. The substance of their testimony was that after severe rains the flagging became unsettled in places and was immediately repaired. The defendant's manager testified that the flagstone opposite the driveway had been replaced by cobblestones and that they did not get out of order.

The jury rendered a verdict for the plaintiff of eleven hundred dollars, and the judgment entered thereon was affirmed by a divided court, one justice dissenting. There is an abundance of evidence justifying the verdict of the jury, and it remains to determine whether there are questions of law presented by the exceptions which call for a reversal of the judgment of the Appellate Division.

At the close of the plaintiff's case the defendant moved to dismiss the complaint upon the ground that the plaintiff had failed to show that the defendant had been guilty of any negligence ; also, upon the ground that the plaintiff had failed to show that the defendant had been guilty of any negligence by which the injuries sustained by the plaintiff were caused ; that the plaintiff has failed to show that the plaintiff herself was free from contributory negligence ; that it appears from the testimony that the wagons which passed over this driveway were wagons of independent contractors, except empty wagons of the Siegel-Cooper Company, which were being pushed in, and the plaintiff has not proved, nor has there been any attempt to prove, that these wagons of the Siegel-Cooper Company in any wise caused the irregularity in the flagstone, and, therefore, the defendant is not responsible for this condition of the pavement. The trial judge denied this motion and the

defendant excepted. At the close of defendant's case this motion was renewed on all the grounds previously stated and the trial judge again denied it and the defendant again excepted. There are also several exceptions to the charge of the trial judge which will be presently considered.

The principles of law applicable to the obligation of abutting owners on city streets to keep the sidewalk in a safe condition for pedestrians are well settled. The abutting owner is not bound to keep the sidewalk in repair, unless by virtue of the requirements of the statute, and is not responsible to travelers for defects therein not caused by himself. (Dillon on Municipal Corporations, § 1012, and cases there cited; *City of Rochester* v. *Campbell,* 123 N. Y. 405, 417.)

In the case at bar the defendant has not set up in its answer the defense that the accident in question was due to the act of an independent contractor, but it raises the point in the motion to dismiss the complaint.

"The general rule is that the owner of property is not liable for the negligent acts of an independent contractor with whom he has an agreement for the performance or prosecution of work. But to this rule there is an exception. If the work itself creates the danger or injury, then the ultimate superior or proprietor is liable to persons injured by a failure to properly guard or protect the work, even though the work is intrusted to an independent contractor." (*Downey* v. *Low,* 22 App. Div. 460, 461; *Storrs* v. *City of Utica,* 17 N. Y. 104; *Creed* v. *Hartmann,* 29 N. Y. 591; *Vogel* v. *Mayor, etc., of New York,* 92 N. Y. 10; *Water Co.* v. *Ware,* 16 Wall. [U. S.] 566.)

Assuming that the dangerous condition of the sidewalk was caused solely by the wagons of the independent contractors who constructed the stone wall that was built on the rear of the premises during the month of June, 1902, it is clear that this case falls within the above exception, and that the work itself created the danger and injury, and the defendant is consequently liable to respond in damages if the judgment of the trial court is sustained. There was also evidence as to the

wagons of the defendant and those of the persons .who removed the manure weekly from the rear premises which would have justified the jury in finding that the unsafe condition of the sidewalk was due in part to them. Assuming, however, that the contractors who built the stone wall on the rear of the premises `and the contractors who removed the manure weekly were solely responsible for the unsafe condition of the sidewalk, it is clear that the defendant is liable under the rule already stated.

The defendant in its brief submitted to this court insists that the testimony failed to show that the dangerous condition of the sidewalk was caused by any act of the appellant, and that the trial court erred in charging the jury that there was some evidence that the appellant itself, or through its employees, caused the bad and defective condition of which complaint is made. This contention and the criticism of certain portions of the charge to the jury, constitute the position of the defendant on this appeal.

We come, therefore, first to the narrow question whether, in the sidewalk of a public and much traveled street, if one flagstone rests upon another and is raised three inches above the level of the walk, it constitutes such a dangerous situation on a dark night as to warrant a recovery on behalf of a person who stumbles and falls over the same, receiving serious injury. To this may be added the facts that this condition was allowed to exist from the summer of 1902 until March, 1903, and that the place was not lighted.

There is evidence permitting the jury to find that this obstruction was three inches high. It would seem to require no argument to establish the fact that this condition was in the highest degree dangerous; that a person passing along at an ordinary gait in the darkness was liable to serious injury in passing over this obstruction.

It has been repeatedly held that a wayfarer, passing along a public street in the night, in the absence of lights or any warning, is entitled to assume that his way is normal and safe. (*Chisholm* v. *State of New York,* 141 N. Y. 246.)

In *Harris* v. *Ubelhoer* (75 N. Y. 175) Chief Judge FOLGER remarked : " A public highway may be used in the darkest night ; a night so dark as the keenest and clearest vision might not be able to detect obstacles and defects. In such a case any man traveling upon it is practically a blind man." (See, also, *McGuire* v. *Spence*, 91 N. Y. 303 ; *Weed* v. *Village of Ballston Spa*, 76 N. Y. 329 ; *Brusso* v. *City of Buffalo*, 90 N. Y. 679.)

It is argued that the case of *Beltz* v. *City of Yonkers* (148 N. Y. 67) lays down a rule that prevents a recovery in the case at bar. The decision cited is undoubtedly a border case, but is wholly unlike the one before us. In that case a young woman, walking along one of the principal streets of the city of Yonkers in the morning, carrying an umbrella over her head, it being a stormy day in the month of February, fell and broke her leg ; she brought suit against the municipality to recover damages, and succeeded in the trial court and at General Term. The condition of the sidewalk causing the accident is thus described in the opinion of this court : " The plaintiff was walking upon a sidewalk of stone flagging, eight feet in width, constructed of two courses of flags four feet wide. At the point in this walk where the accident occurred and at the joint where two of the flags were united, the edges of the stone were broken off and the broken parts removed. This left an uncovered depression in the center of the walk of the same depth as the thickness of the flags, which was about two and one-half inches. The surface area of this depression was about two feet and two inches in length by seven and one-half inches in width. * * * The walk in this condition had been used by the public for years, and it appears that no accident had resulted from such use before." It is quite impossible for me to see the slightest similarity between the condition of the sidewalk in the case cited and the situation presented in the case at bar. The accident in the case cited occurred in broad daylight ; the depression in the sidewalk was more than two feet in length, seven and one-half inches in width and two and one-half inches deep, pre-

senting an opening in which the human foot could be inserted without danger of being caught and held, as in an aperture only large enough to receive it. I regard the *Yonkers* case as a border one, as already stated; but be that as it may, it has no application to the case we are considering. The plaintiff approached the spot in question on a dark night and the place was unlighted; in her path was a solid stone obstruction, as the jury were entitled to find, three inches in height, and against which it was highly probable that the foot of a pedestrian might strike in passing. The fact is that this record discloses that there had been a large number of accidents at this point.

This court has recently passed on a similar obstruction. In *Fordham* v. *Gouverneur Village* (160 N. Y. 541) the head note reads in part: "On the trial of an action against a village for damages for the death of the plaintiff's intestate, it appeared that at the time of the accident the village was laying a water pipe under the sidewalk of a bridge, and for the purpose cut holes in the planking; that the walk not having been finished on the day the holes were cut, they were each covered at night-fall with a plank one to two inches thick; that before this the walk had a smooth surface; that no light or signal was placed on the bridge. * * * *Held*, that the evidence sufficed to take the case to the jury upon the question whether the injury (the plaintiff had fallen at this point in the darkness) was caused by stumbling over the planking, and upon the questions of the defendant's negligence and of the plaintiff's intestate's freedom from contributory negligence."

It remains to consider the two exceptions taken to the refusal of the trial court in declining to charge the requests of appellant's counsel. The first request reads: "I ask your Honor to charge the jury that the defendant in this case is not liable unless the plaintiff has shown by a fair preponderance of the proof that the defendant, or its agents, caused the obstruction or contributed towards the cause of the obstruction or unevenness in the sidewalk over which the plaintiff

claimed to have fallen." The court said: "I decline in that language."

This qualified refusal was proper for the reason that it only included the defendant or its agents and left out the element of independent contractor. Furthermore, the court was justified in refusing to adopt the language of this request, as it had fully charged the request in substance, with the addition of the element of independent contractor. The jury were told in plain terms that the defendant was liable if it created the obstruction itself, or through its employees, or by an independent contractor.

The second request reads: "I ask your Honor to charge that the defendant was not responsible for the acts of the manure contractors or the contractors for the stone wall in driving over the sidewalk over which the plaintiff claims to have fallen." The court ruled: "I decline in that language; I repeat what I said before in that regard as to their liability." This request was properly refused for the reason already stated, that the point was fully covered by the main charge.

The appellant makes the additional point that the court erred in the reception of illegal evidence over the objection and exception of the defendant. This exception refers to the stipulated facts in evidence, to which reference has already been made. Prior to stipulating these facts in evidence, the defendant's counsel stated that he admitted the facts, but objected to their being offered as evidence against the defendant, and after the stipulation was spread upon the record he objected upon the ground that it was incompetent, for the reason that it had not been connected with this defendant, and it does not show that the defendant was in any way responsible for the acts mentioned in the stipulation.

It is a sufficient answer to this objection that it was conceded that the contractors who built the stone wall on the premises in the month of June, 1902, and the contractors who removed the manure from the defendant's premises, were engaged in the work under a contract with the Siegel-Cooper Company.

I am of opinion that the judgment and order appealed from should be affirmed, with costs.

Cullen, Ch. J., Vann and Werner, JJ., concur; Gray and Haight, JJ., dissent on authority of *Beltz* v. *City of Yonkers* (148 N. Y. 67); O'Brien, J., absent.

Judgment and order affirmed.