ENGLISH v. KWINT.

(Supreme Court, Appellate Division, First Department. November 18, 1910.)

1. MUNICIPAL CORPORATIONS (§ 808*)—STREETS—SIDEWALKS—LIABILITY OF ABUTTING OWNER.

In an action against an abutting owner for injuries caused by stepping in a hole in the sidewalk in front of defendant's premises, it was not shown that the hole was put there by the defendant, or was in any way

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

appurtenant to, or used in connection with, the premises. *Held*, that as defendant was not shown to be responsible for the presence of the hole, and as it was not shown to be appurtenant to his premises, he was not liable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1688; Dec. Dig. § 808.*]

2. MUNICIPAL CORPORATIONS (§ 808*)—STREETS—SIDEWALKS—PRIVATE LIABILITY—STATUTES.

As the owner of an abutting lot is not liable for injuries happening to passers-by, unless caused by some obstruction placed on the sidewalk by him, or through failure to observe some statutory duty to passers-by, it was improper, in an action against an abutting owner for injuries received from stepping into a hole in the sidewalk, for the existence of which defendant was not shown to be in any way responsible, to allow the introduction of Sanitary Code, § 41, which provides that owners, tenants, etc., shall keep the sidewalks in front of their premises free from obstruction and nuisance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1688; Dec. Dig. § 808.*]

Appeal from Trial Term, New York County.

Action by Susanna English against Michael Kwint. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Lyman A. Spalding (Theodore H. Lord, of counsel), for appellant. David M. Neuberger, for respondent.

CLARKE, J. The complaint alleges that the defendant was the owner in fee and in possession and control of the premises known as No. 232 East 114th street; that said premises adjoin a certain public highway known as East 114th street, in which there was a certain drain hole opening, and that the said drain hole opening was of and belonged to the defendant's said premises, and was under his occupancy and control; that on or about the 26th of August, 1906, defendant wrongfully and negligently permitted said drain hole to be and continue, and the same then and there was, so badly, insufficiently, and defectively covered and protected, that by means thereof plaintiff, who was then and there lawfully and carefully passing in and along said street, necessarily and without any fault or negligence on her part, fell in the said drain hole, and as a result thereof she sustained severe and serious injuries to various parts of her body; "that the said drain hole, as so defective and insufficiently and badly covered and protected by the defendant, was a nuisance and dangerous to life and limb to persons passing along and over the said highway; that the said accident and injuries resulting therefrom were due solely to the carelessness and negligence and unlawful acts of the defendant, and that this plaintiff in no wise contributed thereto."

The answer admits that defendant is, and at all the times mentioned in said complaint was, the owner in fee of the premises known as No. 232 East 114th street; that the said premises adjoined a certain public highway known as East 114th street; and that there was in the side-

walk of said street in front of the defendant's premises a certain ventilator described in the second paragraph of the complaint as a "drain hole." Upon information and belief it denied each and every allegation of the complaint not hereinbefore specifically admitted.

Plaintiff lived at 240 East 114th street, and on Sunday evening, with her daughter, was walking back to her home after having been out for a stroll:

"In coming down we had been talking as we left the avenue, but we had not talked for four or five minutes previous to this, and there was a number of baby carriages on the sidewalk, and I stepped out of the way of them, to step outside of them, and I stepped into the hole, and that is all I know. Before I stepped into this hole, I was looking straight ahead. There was nothing there to attract my attention. I did not observe anything. I looked down to see if the way was clear; that is all. There was no grating on the sidewalk that I saw. I say I went into a hole. I fell on my left side, with my left foot. * * * At the time this happened, when I went into this hole, it was dark."

Under cross-examination she testified:

"I didn't notice what kind of a hole it was. * * * I never had noticed it before the accident; and I never examined it after the accident. * * * I lived about two or three doors from the place where this accident occurred. * * * When I stepped into the hole, I was walking slowly along. I was looking straight ahead. I was not looking down at the sidewalk. I do not know how near the curb I was, but I should judge about a foot or a foot and a half from the curb."

Goodman testified that he knew the plaintiff:

"On the night of August 26, 1906, on Sunday, I remember when she fell. I noticed the hole in which she fell. Q. Previous to that day—the drain hole? A. Yes, sir; I did, at least a month. At the time I seen it, the hole was open, and then it was filled with sand, and then it was open again. The children opened it playing around the hole. There was no covering on the hole of no kind. This hole was about five or six inches wide. It was about a foot long. It was on the sidewalk. I could not tell how deep it was. * * * It was about two feet away from the curb, and between the curb and the stoop line. It was not filled in with dirt or anything, not at the time of the accident. I haven't any idea about the depth of the hole. * * * This hole ran lengthwise, east and west. It ran in the same direction as the curb and the sidewalk, and she lay there on her side. Her whole foot was in the hole. It was wedged in there. I helped to get it out. We did not lift her up before we took her out. We had to take her shoe off in order to get her foot out. * * * I could not judge then how deep the hole was, or whether it had any bottom—whether it was an opening down into the cellarway without any pit there, or whether there was something beneath the point where her shoe was. I could not say whether there was anything beneath or not."

Pincus testified that he had seen this hole previously for a month before the accident:

"It was an open drain; it was supposed to have a cover on like a grating. There was no cover on it; it was open. I couldn't exactly say how deep it was. * * * I don't know what was in there, whether it was sand, or whether the hole led down into the cellar. No sir; it was not a hole right to the cellar. There was something in there, dirt at the bottom of it. Of course, I don't know anything about the internal construction of this air pipe, or whatever it was."

The plaintiff's daughter testified:

"As we stepped aside, my mother's foot went down into this hole. I could not see how far her foot was into the hole; I did not look."

The plaintiff offered from the ordinances of the city of New York section 41 of the Sanitary Code:

"Every owner, tenant, lessee, and occupant of any building or lot, whether vacant or occupied within or near the built up portion of said city of New York, shall keep and cause to be kept the sidewalk and flagging and curb stone in front thereof free from obstruction or nuisance of every kind, and shall not allow anything in the area or yard or on or about his premises to become a nuisance or dangerous or prejudicial to health or life."

This was admitted under objection and exception. The plaintiff having rested:

"Defendant's counsel moves to dismiss the complaint, on the ground that the plaintiff has failed to prove that the defendant, Michael Kwint, was guilty either of negligence or of maintaining a nuisance; counsel stating that he admits that the defendant was the owner of the premises, but denies that he was in possession and control of the premises in question, admits that this drain hole was in front of the premises, but denies that the premises were under the use, control, or possession of the defendant."

Which having been denied, defendant rested, and then renewed his motion, which being denied, he excepted. He did not ask that plaintiff be compelled to elect between negligence or nuisance, and the case was submitted to the jury upon both grounds. At the close of the court's charge, defendant excepted to the submission of the question of defendant's negligence to the jury, and also excepted to the submission of the question whether or not the defendant maintained a nuisance. He also asked the court to charge that there was no evidence that the defendant occupied or used the premises at the time the accident occurred, or immediately prior to that time, which was declined, except as charged.

I have recited all of the testimony descriptive of the hole into which the plaintiff put her foot. There is a failure of proof establishing defendant's responsibility therefor, under the doctrine of negligence or nuisance. The case was evidently tried by the plaintiff and submitted by the learned court upon the theory of the coal hole cases, illustrated by Clifford v. Dam, 81 N. Y. 52, and Jennings v. Van Schaick, 108 N. Y. 530, 15 N. E. 424, 2 Am. St. Rep. 459. But in the Clifford Case the court said:

"The public are entitled to an unobstructed passage upon the streets including the sidewalks of the city, but a structure such as that proved in this case was an obstruction. It was sufficient for the plaintiff to prove that in passing along the sidewalk he was injured by this structure, which was appurtenant to defendant's premises. * * * It is quite clear that the plaintiff was not bound to prove in the first instance anything except the existence of a hole in the sidewalk, for which the defendants were responsible, and that in passing along the sidewalk he fell into it."

The difficulty in the case at bar is that there is no evidence to show that this hole was a structure appurtenant to the defendant's premises, or that he created it, or maintained it, or was in any way responsible for its creation or maintenance. It is not shown what its purpose was, where it led to, what its subsurface depth was, or what its connections were. For aught that appears, it may have been constructed by the municipal authorities to give access to its water mains or sewers, or it may have been constructed by some of the public service corporations

to give access to a gas or electric line, or it may have been a mere hole in the ground. It is described as a drain hole, and this is the admission of the defendant; but how a drain hole adjacent to the curb upon the sidewalk can be appurtenant to the defendant's premises is not in any manner suggested by the record. The admission is that the defendant was the owner of the premises, and that this drain hole was in front of the premises, and that is all.

Upon the record the defendant has been held liable for a defect in the sidewalk of a public street for which he was not shown to be liable. In City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760, the court said:

"We have thus referred at length to many of the cases holding the nonliability of the lot owners, for the reason that there seems to have been quite a common impression, in which judges and lawyers have shared, that abutting owners are in some way liable to an injured party for damages occasioned from their neglect to keep sidewalks in repair, when that duty is in any way enjoined upon them. It seems to us that there could never have been any logical cause for such impression, and it seems it has no foundation in the reported cases. Any other conclusion than that reached by us would, we think, be most unfortunate, as it would tend to relax the vigilance of municipal corporations in the performance of their duties in respect to the repair of streets and highways, and impose that duty upon those who might be utterly unable to discharge it. It would tend directly to demoralize the public service, and lead to disorder, decay, and impassibility of the public highways."

And in Mullins v. Siegel-Cooper Co., 183 N. Y. 129, 75 N. E. 1112, the court said:

"The principles of law applicable to the obligation of abutting owners on any streets to keep the sidewalk in a safe condition for pedestrians are well settled. The abutting owner is not bound to keep the sidewalk in repair unless by virtue of the requirements of the statute, and is not responsible to travelers for defects therein not caused by himself."

Under these authorities, the admission in evidence of the section of the Sanitary Code, cited, supra, was error.

As the plaintiff wholly failed to make out her case, the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.