KATHERINE T. KUHN, Respondent, *v.* THE VILLAGE OF EAST SYRACUSE, Appellant.

Fourth Department, May 7, 1924.

Villages — sidewalks — action to recover for injuries suffered when plaintiff caught her toe in hole in concrete sidewalk and fell — hole was caused by breaking away of concrete on outer edge of walk and was thirty-two inches long, eight inches wide and three inches deep — hole was obscured by snow and slush — plaintiff's toe was caught under overhang of concrete at edge of hole but not held fast — condition had existed for fourteen months — no evidence of similar accident — defendant is not liable.

Defendant is not liable for injuries suffered by the plaintiff when she caught her toe under the overhang of concrete at the edge of a hole in a concrete sidewalk and fell, where it appears that the hole, which was caused by the breaking away of concrete on the outer edge of the sidewalk, was thirty-two inches long, eight inches wide and three inches deep and obscured from sight by snow and slush; that plaintiff's foot was not held fast; that the walk had existed in the same condition for at least fourteen months prior to the accident; and that there was no evidence that a similar accident had ever happened at that place.

APPEAL by the defendant, The Village of East Syracuse, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 1st day of June, 1923, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 7th day of June, 1923, denying the defendant's motion for a new trial made upon the minutes.

*James F. Ray* [*D. Charles O'Brien* of counsel], for the appellant.

*Andrews & Andrews* [*Paul Shipman Andrews* of counsel], for the respondent.

HUBBS, P. J.:

The defendant village has a population of about 4,300. It has seventeen miles of improved sidewalk, mostly concrete. The walk where the accident in question occurred was constructed of concrete and was four feet wide. The street along which it runs is one of the principal streets of the village. The facts, stated in the most favorable light for the plaintiff, are, briefly, as follows:

On Sunday, April 2, 1922, at about noon, she and her daughter were returning home after attending church. There was about two inches of slush and snow on the sidewalk. She did not notice the hole in question as she approached it. She testified: " Well, I was walking along and I suddenly slipped into this hole. It had snow and slush in it. I couldn't see the hole, and my toe caught and threw me. * * * Why, my toe caught in the ragged edge of the concrete and threw me. * * * My toe went under the ragged edge and threw me." She also testified that it was the top of her toe that caught under the projecting edge of the concrete.

Upon the trial the overshoe, which she testified she was wearing on her right foot at the time of the accident, was produced, and it was argued that scratches appearing on the top of the toe of the overshoe were made by the projecting concrete. The hole in question was thirty-two inches long, eight inches wide and from two inches to three inches deep; the jury could have found that it was three inches deep. It was caused by the breaking off of a piece of the concrete walk on the outer side, thirty-two inches long. At the northerly end, where the plaintiff fell, the break, as described in respondent's brief, " intersected the edge of the walk, not at a long angle or point, but rounding into it, like a flattened semi-circle." Plaintiff's husband testified that he examined the hole the next day after the accident, and discovered that at the north end, where the plaintiff caught her toe, there was an overhang of from one-fourth to one-half inch. The plaintiff's daughter testified that there was an overhang at that point of about one-fourth inch. The bottom of the hole, so far as appears from the evidence, was fairly smooth.

The defendant's evidence tended to establish that the hole was not over two inches deep in any place and that there was no overhang of the top part of the concrete.

The sole question which we deem it necessary to discuss is whether the evidence made a question of fact to submit to the jury.

The learned counsel for respondent does not seriously question but that this case should be governed by the decisions in *Beltz* **v.**

*City of Yonkers* (148 N. Y. 67); *Hamilton* v. *City of Buffalo* (173 id. 72); *Butler* v. *Village of Oxford* (186 id. 444), and other like cases, if it were not for the evidence in regard to the overhanging top of the concrete. He has urged with great earnestness that the fact that the top of the concrete overhung the hole so that the top of the plaintiff's shoe was caught under the overhang and tripped her, distinguishes this case from those cited, and others of the same nature. It is urged that the situation existing in this case constituted a trap, and that when plaintiff's toe went under the projecting concrete she was sure to fall. It is contended that this case falls within the principle enunciated in the following cases, which are relied upon by respondent to sustain this judgment: *Merwin* v. *City of Utica* (172 App. Div. 51); *Mullins* v. *Siegel-Cooper Co.* (183 N. Y. 139); *Fordham* v. *Gouverneur Village* (160 id. 541); *Durr* v. *N. Y. C. & H. R. R. R. Co.* (184 id. 320); *Wensley* v. *City of New York* (173 App. Div. 248); *Moshier* v. *City of New York* (190 id. 111); *Moroney* v. *City of New York* (117 id. 843).

In the last case cited the plaintiff testified that she did not trip over the irregularity, but that her fall was occasioned by her foot catching in the hole and being held fast, so that force was required to remove it. At the point where she was injured the stones in the sidewalk were so laid that, where two should have joined, one was two inches higher than the other, with a hole under it two inches deep. The trial court charged in that case as follows: " That if the accident was occasioned simply by reason of the fact that one stone was elevated over the other, simply because she tripped she could not recover; and that it was only in case they found that the aperture or hole existed and caught plaintiff's foot, holding it fast and causing her to fall," that the jury could find for the plaintiff.

The case of *Moshier* v. *City of New York* (*supra*) is similar. Plaintiff's foot caught under the edge of a hole in the sidewalk, causing her to fall. The decision is based largely upon the case of *Moroney* v. *City of New York* (*supra*).

In *Merwin* v. *City of Utica* (*supra*) the accident happened upon a city street. The nature of the irregularity in the sidewalk, which threw the plaintiff to the ground, is not disclosed in the opinion. The statement in the opinion in regard to the defendant's negligence is *obiter dicta*. The judgment in favor of the plaintiff was reversed because she failed to serve upon the corporation counsel of the city a notice of intention to commence action upon the claim duly served upon and filed with the city, as required by section 244 of the Second Class Cities Law.

The other cases relied upon by respondent are reviewed by

Chief Judge HISCOCK in his opinion in *Butler* v. *Village of Oxford* (*supra*), and it would serve no useful purpose to review them here.

In each of those cases there was some distinguishing feature taking it out of the general rule applicable to such a situation as is disclosed in this case.

The general principle governing those cases is not questioned. The defendant was not an insurer of the absolute safety of its walks. It was not bound to keep its walks in a perfect condition, so that an accident could not happen. It was bound to use only reasonable care. Usual and ordinary slight defects in sidewalks do not create a legal liability for accidents. In *Terry* v. *Village of Perry* (199 N. Y. 79) Judge CHASE wrote: " ' We think we may take judicial notice of the fact which ordinary observation discloses that there is scarcely a rod in the streets of any city in which there may not be discovered some little unevenness or irregularity in sidewalks, crosswalks, curbs or pavements. As the result of various causes, climatic and otherwise, they are constantly occurring and recurring. Ordinarily they cause no difficulties, and it would require a vast expenditure of money to remove them all.' "

To hold the defendant liable in this case, where plaintiff's injury was caused by a piece thirty-two inches long and eight inches wide being broken out of the outer edge of a four-foot concrete walk, would be to extend the liability of the defendant far beyond the measure of liability laid down by the Court of Appeals in many cases. The plaintiff's foot was not caught and held fast, as in *Durr* v. *N. Y. C. & H. R. R. R. Co.* (*supra*). She caught the toe of her shoe; that threw her forward for several steps; she was unable to recover her equilibrium and fell, about twenty feet from the point where she caught her foot. It appears that the walk had existed in the same condition for at least fourteen months prior to the accident, and there is no evidence that a similar accident had ever happened. There is evidence that one woman stepped into the hole on a dark night and fell, but she testified that she did not catch her toe on the edge of the hole. It is common knowledge that concrete walks will sometimes chip and break if heavy vehicles are backed against them or heavy substances are dropped upon them. That is quite likely what happened to the walk in question. Doubtless there were many places in the seventeen miles of concrete walk maintained in the defendant village where pieces similar to the one in question were broken out. The officers of the village were bound to exercise their discretion in expending the limited amount of money available for street pur-

poses, and to hold the village liable because this particular place had not been repaired would place upon it too strict a liability.

The judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

All concur.

Judgment and order reversed on the law and facts and new trial granted, with costs to appellant to abide event.