■ MARGARET RYAN et al., Respondents, v. GORDON L. HAYES, INC., Appellant.— TAYLOR, J. In personal injury negligence actions defendant appeals from a judgment of the Rensselaer County Court in favor of plaintiffs entered upon jury verdicts and from the order denying its motion to set them aside. In the afternoon of May 11, 1962, plaintiffs, elderly sisters, were walking arm in arm in a northerly direction on the westerly sidewalk of River Street in the City of Troy. As they approached the abutting premises of defendant, they encountered a ladder used in attaching an overhanging neon sign to the building located thereon and so positioned as to obstruct two thirds of the public sidewalk. In avoiding the obstacle, about which were strewn pieces of wire and mechanics' tools, plaintiffs veered to the unobstructed portion thereof the surface of which was shown without dispute to have been depressed, irregular and "in very bad condition". In effecting the passage which provided "only a little [walking] space" the heel of the shoe of one plaintiff caught in the broken flagging causing her to fall to the sidewalk and to bring down her companion with her. Each sustained personal injuries for which the jury has awarded damages. The use of the public sidewalk had been substantially reduced for defendant's exclusive benefit. Plaintiffs were thus relegated, of necessity, to a portion thereof which was found to have been in disrepair and hazardous to pedestrians. The risk of injury was the direct result of the obstruction placed in the public thoroughfare. It was a jury question, we think, whether a reasonably prudent person should have anticipated the consequences which followed. (*Donovan* v. *Bender,* 11 A D 2d 735, affd. 9 N Y 2d 854; *O'Neill* v. *City of Port Jervis,* 253 N. Y. 423.) The comment in the trial court's decision that the impeding structure was not the proximate cause of plaintiffs' injuries was intended to distinguish the causality problem in the instant cases from the simpler one which would arise from a pedestrian's actual contact with the ladder itself. Assuming, as appellant argues, that the installer of the sign was an independent contractor it cannot escape liability on this ground since its duty to the public to refrain from diverting persons lawfully using the municipal sidewalk to a defective passageway thereon during the progress of the work was nondelegable. (*Mullins* v. *Siegel-Cooper Co.,* 183 N. Y. 129; *Boylhart* v. *Di Marco & Reimann,* 270 N. Y. 217; *Rohlfs* v. *Weil,* 271 N. Y. 444; *Wright* v.

*Tudor City Twelfth Unit*, 276 N. Y. 303.) It is the minority view that by whom or for whom the sign was being placed does not appear. But the appellant's motion for a nonsuit (it adduced no evidence) was specifically limited to stated grounds, none of which could be deemed by any reasonable interpretation to raise any question as to its ownership or occupation or that the purpose of the sign was other than for use in the furtherance of its business. And the case was submitted to the jury in a charge to which no exception was taken. The record adequately presented questions of fact for determination by the jury. In our view its findings are supported by the evidence. Judgment and order affirmed, with costs to respondents. HERLIHY and HAMM, JJ., concur; GIBSON, P. J., dissents in the following memorandum, in which REYNOLDS, J., concurs: The complaint alleges that by reason of the work of installation of a sign upon the building and the placement of a ladder upon the sidewalk, "plaintiffs were forced to walk upon the one third of the sidewalk bordering the curb which was in a defective condition and were caused to fall violently on the depressed, irregular surface and sustained injuries". The court did not charge the theory of negligence alleged in the complaint nor, indeed, did it attempt to relate to the proof in the case the general rules of negligence which it did charge. Thus, the definition of defendant's possible liability was limited to these brief hypotheses: "The owner, if he has created the condition directly to the sidewalk or his use of the sidewalk creates the condition or the sidewalk is constructed in a special manner for his benefit, has the duty to maintain that portion of the sidewalk in a reasonably safe condition for the public users." It seems to be conceded by everyone concerned that there was no evidence in the case from which the jury could find, upon any of the grounds charged by the court, any "duty to maintain that portion of the sidewalk in a reasonably safe condition"; and, in fact, the trial court, in passing upon defendant's motion to set aside the verdicts, held that neither of those grounds existed, but nevertheless denied the motion, upon the theory originally pleaded and thereafter lost sight of, that the ladder required plaintiffs to walk where "they encountered the dangerous condition that caused their fall", the court citing as authority for its decision *Donovan* v. *Bender* (11 A D 2d 735, affd. 9 N Y 2d 854), in which a verdict against the owner of abutting premises was sustained because the public passageway was so obstructed by mounds of sand placed there by the owner that pedestrian traffic was channeled into the roadway, where plaintiff walked and was struck by an automobile. If we were to indulge the rather difficult assumption that verdicts necessarily based on evidentiary grounds now concededly nonexistent, can nevertheless be sustained upon supposed facts not found and a theory of liability not charged, it would nevertheless have to be held that plaintiffs failed as a matter of law to establish actionable negligence or, at the very least, that the verdicts were contrary to the weight of the evidence. Passing the irreconcilable conflicts between the plaintiffs' testimony on the trial and that on their examinations before trial, going to the very heart of the case, it is all too obvious from the testimony itself that neither plaintiff knew whether the fall was caused by a defect in the sidewalk or by some object or other cause for which defendant could not be held responsible. Further, there seems to me no adequate proof of a defect in the sidewalk constituting a dangerous condition; and certainly no sidewalk condition which, without evidence, could be found comparable to the roadway, rendered dangerous by vehicular traffic, upon which the automobile-pedestrian accident in the *Donovan* case occurred; the only competent evidence in this case being that the sidewalk was "uneven", "broken" and "depressed". Finally, there seems no basis for imputing to defendant any liability arising out of the use or position of the ladder. As warranting such imputation, nothing

was shown except that a sign was being attached to defendant's building. By whom or for whom the sign was being placed does not appear. Indeed, there was no indication whether the building was occupied by defendant, or by one or many tenants and businesses, or not at all; and no demonstration of the content of the sign, or of the business or object thereby advertised, whether of defendant or of someone else. In the mere facts of a building, a sign and a ladder, there seems to me no evidence nor any legitimate inference therefrom casting defendant in liability and none, certainly, supportive of the majority finding that, "The use of the public sidewalk had been substantially reduced for defendant's exclusive benefit." If, despite the absence of adequate proof of a dangerous condition of the sidewalk and the failure of any proof that defendant directed or participated in the work or derived any benefit therefrom, it be nevertheless assumed that a dangerous condition did exist and that the work of installing the sign was performed by a contractor of some kind, by arrangement with defendant or with its acquiescence, liability would not follow even then without some proof that defendant had notice of a dangerous condition arising from the placement of the ladder or, alternatively, notice that there were upon the sidewalk tools and wire, which, under the evidence, may have constituted the true cause of the accident. "In other words, where the danger arises merely because of the negligence of the independent contractor or his employees, which negligence is collateral to the work and which is not reasonably to be expected, the owner cannot be held liable to a third party. But where from the nature of the work the duty of care in its performance is non-delegable and the owner is put on notice of the existence of such a dangerous condition, he may properly be held liable to a third party injured by the negligent act of a subcontractor or his employees. (*Wright* v. *Tudor City Twelfth Unit, Inc.*, 276 N. Y. 303, 307.)" (*Schwartz* v. *Merola Bros. Constr. Corp.*, 290 N. Y. 145, 152; *Gittleman* v. *City of New York*, 5 A D 2d 782.) The cases cited in the majority memorandum seem readily distinguishable. In *Donovan* v. *Bender* (*supra*), "the sand mounds were placed there by [defendant owner] or its agents"; and *O'Neill* v. *City of Port Jervis* (253 N. Y. 423) involved "barriers erected by [the owner]" (p. 427) and maintained "for almost thirty days" (p. 430). The only authorities cited by the majority in support of vicarious liability antedate *Schwartz* (*supra*) but, in any event, are distinguishable from the case before us. Thus, in *Mullins* v. *Siegel-Cooper Co.* (183 N. Y. 129), the dangerous condition had existed "for a period of several months before the accident" (p. 129; headnote); while in *Boylhart* v. *Di Marco & Reimann* (270 N. Y. 217), the act and danger were not, as here, collateral, but "inherent in the work" (p. 220) and the subcontractor's act was in violation of the duty imposed upon the contractor by the permit issued to it by the city to store materials upon the street (p. 221). In *Rohlfs* v. *Weil* (271 N. Y. 444), again the danger was inherent and there was, in addition, evidence of notice and control. In *Wright* v. *Tudor City Twelfth Unit* (276 N. Y. 303), the proof of notice was decisive (pp. 306–308). Consequently, I vote for reversal and dismissal.