CHARLES F. FORDHAM, as Administrator of ADELL M. FORDHAM, Deceased, Appellant, *v.* GOUVERNEUR VILLAGE, Respondent.

1. NEGLIGENCE — PERSONAL INJURY CLAIMED TO HAVE BEEN CAUSED BY OBSTRUCTION IN SIDEWALK ON VILLAGE BRIDGE — CASE FOR JURY. On the trial of an action against a village for damages for the death of the plaintiff's intestate, it appeared that at the time of the accident the village was laying a water pipe under the sidewalk of a bridge, and for that pur-

pose cut holes in the planking; that the work not having been finished on the day the holes were cut, they were each covered at nightfall with a plank one to two inches thick; that before this the walk had a smooth surface; that no light or signal was placed on the bridge; that the plaintiff's intestate, who was then a vigorous woman thirty-eight years of age, left her home on the night in question intending to cross the bridge, and soon after was found on the bridge sidewalk, upon her hands and knees, trying to get up; and that, on being assisted home, it was found that her knee had been seriously injured, and amputation and death followed. The witness, who found the injured woman upon the bridge, testified that they both felt about on the sidewalk at the spot and found a plank which was about a finger length higher than the rest of the walk. The attending physician testified that the injury was such as would be produced by falling and striking the knee upon the floor or some hard substance. *Held,* that the evidence sufficed to take the case to the jury upon the question whether the injury was caused by stumbling over the plank, and upon the questions of the defendant's negligence and of the plaintiff's intestate's freedom from contributory negligence.

2. EVIDENCE THAT OTHERS ENCOUNTERED OBSTRUCTION IN SIDEWALK. The plaintiff attempted to show by several witnesses that on the evening of the injury they had stumbled upon the planks used to cover the holes in the sidewalk on the bridge. *Held,* that this evidence was competent, so far as the plank upon which it was claimed that the plaintiff's intestate stumbled was concerned. .

*Fordham* v. *Gouverneur Village,* 15 App. Div. 624, reversed.

(Argued October 5, 1899; decided November 21, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered March 17, 1897, affirming a judgment in favor of defendant entered upon a nonsuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. A. Kellogg* for appellant. The village was responsible for the acts of the board of water commissioners. (*Wilson* v. *City of Troy,* 60 Hun, 183; *Pettengill* v. *Yonkers,* 116 N. Y. 558; *Fleming* v. *Vil. of Suspension Bridge,* 92 N. Y. 368; *Brusso* v. *City of Buffalo,* 90 N. Y. 679; *Deyoe* v. *Vil. of Saratoga Springs,* 1 Hun, 341; *Bailey* v. *Mayor, etc.,* 3 Hill, 531.) The undisputed facts show

that the village authorities were negligent. (*Ochsenbein* v. *Shapley*, 85 N. Y. 224; *Hart* v. *H. R. B. Co.*, 80 N. Y. 622; *Kain* v. *Smith*, 89 N. Y. 375; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 451; *Payne* v. *T. & B. R. R. Co.*, 83 N. Y. 572; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 466; *Goodfellow* v. *Mayor, etc.*, 100 N. Y. 15; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 546.) The question of the contributory negligence of plaintiff's intestate should have been submitted to the jury. (*Massoth* v. *D. & H. C. Co.*, 64 N. Y. 528; *Rodrian* v. *N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 528; *Weber* v. *N. Y. & H. R. R. R. Co.*, 58 N. Y. 451; *Wilbur* v. *D., L. & W. R. R. Co.*, 85 Hun, 155; *Kelsey* v. *S. I. R. T. R. R. Co.*, 78 Hun, 209; *Palmer* v. *N. Y. C. & H. R. R. R. Co.*, 112 N. Y. 235; *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 420; *Miller* v. *N. Y. C. & H. R. R. R. Co.*, 82 Hun, 170; *House* v. *Erie R. R. Co.*, 26 App. Div. 559; *Noble* v. *N. Y. C. & H. R. R. R. Co.*, 20 App. Div. 40.) The refusal to allow plaintiff to prove that other persons had fallen upon the bridge by reason of the plank which had been placed thereon was clearly error, as it was evidence which tended to establish the dangerous character of the obstruction, which must have been known to the defendant. (*Quinlan* v. *City of Utica*, 11 Hun, 217; *Gillrie* v. *City of Lockport*, 122 N. Y. 403; *Pomfrey* v. *Vil. of Saratoga Springs*, 104 N. Y. 469; *Brewer* v. *City of New York*, 31 App. Div. 244; *Lundbeck* v. *City of Brooklyn*, 26 App. Div. 595; *Champlin* v. *Vil. of Penn Yan*, 34 Hun, 33.)

*William Neary* for respondent. Plaintiff failed to prove a cause of action. (*Lane* v. *Town of Hancock*, 142 N. Y. 510; *Goodfellow* v. *Mayor, etc.*, 100 N. Y. 15; *Beltz* v. *City of Yonkers*, 148 N. Y. 67; *Linkauf* v. *Lombard*, 137 N. Y. 417.) No negligence on the part of defendant was proven. (*Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Hunt* v. *Mayor, etc.*, 109 N. Y. 134; *Danaher* v. *City of Brooklyn*, 119 N. Y. 241; *Beltz* v. *City of Yonkers*, 148 N. Y. 67.) The

absence of contributory negligence on the part of deceased was not proven. (*Bond* v. *Smith,* 113 N. Y. 378; *Babcock* v. *F. R. R. Co.,* 140 N. Y. 308; *Peaslee* v. *Town of Chatham,* 69 Hun, 389; *Wiwirowski* v. *L. S. & M. S. R. Co.,* 124 N. Y. 420; *Geoghegan* v. *A. S. Co.,* 3 Misc. Rep. 224; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.,* 58 N. Y. 248; *Hart* v. *H. R. B. Co.,* 84 N. Y. 56; *Powell* v. *Powell,* 71 N. Y. 73; *Weston* v. *City of Troy,* 139 N. Y. 281.) Negligence of defendant cannot be presumed from the mere happening of the accident. (*Terry* v. *N. Y. C. R. R. Co.,* 22 Barb. 576; *Holbrook* v. *U. & S. R. R. Co.,* 12 N. Y. 236; *Cosulich* v. *S. O. Co. of N. Y.,* 122 N. Y. 118; *Reiss* v. *N. Y. S. Co.,* 128 N. Y. 103.) The rule that where facts and circumstances are proven from which the inference might be drawn that the accident was caused wholly by the negligence of defendant, then the question as to whether plaintiff was guilty of contributory negligence is one for the jury does not apply in this case. (*Ruppert* v. *B. H. R. R. Co.,* 154 N. Y. 90; *People* v. *Kennedy,* 32 N. Y. 141; *People* v. *Harris,* 136 N. Y. 429.) The various other questions or rulings to which exceptions were taken during the trial have no bearing on the two questions raised by defendant and decided by the court, nor to the questions on which plaintiff requested to go to the jury. (*Brady* v. *M. Ry. Co.,* 127 N. Y. 46; *Dye* v. *D., L. & W. R. R. Co.,* 130 N. Y. 673; *Ster* v. *Tuety,* 9 N. Y. S. R. 632; *Stever* v. *N. Y. C. & H. R. R. R. Co.,* 7 App. Div. 392; *Eisinlord* v. *Clum,* 126 N. Y. 552; *Stouvenel* v. *Stephens,* 26 How. Pr. 244; *Matter of Tyler,* 80 Hun, 408; *O'Gara* v. *Eisenlohr,* 38 N. Y. 296.)

HAIGHT, J. This action was brought to recover damages for the death of Adell M. Fordham, which was caused, as is claimed, by the negligence of the defendant.

The defendant is a municipal corporation, situated upon both sides of the Oswegatchie river, which is crossed by a bridge connecting the principal streets of the village. At the time of the accident in question it was engaged, through its

water commissioners, in laying a water pipe across the river under the sidewalk of the bridge. In order to accomplish this work a number of holes, ten or twelve feet apart, were cut through the planks of the sidewalk. Prior to the cutting of the holes the flooring of the sidewalk consisted of planks two inches thick and six inches wide, with a smooth surface. The work of laying the pipe was not entirely finished on the day on which the holes were cut, and, when it came night, they were covered by the placing of a plank or board, varying in thickness from one to two inches, over each hole. No light or warning signal was placed upon the bridge so as to enable travelers to observe the planks, and there was no light other than that obtained from street lamps, which were distant about one hundred and fifty feet from either end of the bridge. On the night of the accident the plaintiff's intestate left her home for the purpose of going to the post office, and in doing so had to cross the bridge. At that time she was thirty-eight years of age, weighing about 165 pounds, in good health, strong and vigorous. Shortly after leaving home she was found on the bridge near the stone waterhouse, down upon her hands and knees trying to get up. She was assisted and taken to her home apparently suffering great pain and was attended by a physician. It was found that her knee had been injured by the forcing of the patella upward about an inch and a half from its normal place and that the lower ligaments which held it in place had been torn and separated. Various treatments were applied by the attending physician, including that of splints and plaster casts, but without avail. The inflammation continued in the injured parts, finally resulting in the formation of pus and a disease of the bone, which, in the opinion of the attending physician and those that he called in consultation, rendered an amputation of the limb necessary. This operation was performed, and she continued to live for some days thereafter, but finally died, owing to exhaustion following delirium resulting from her long confinement and continued mental strain.

Upon the conclusion of the plaintiff's evidence the defend-

ant moved for a nonsuit upon the ground that the plaintiff
had failed to make out a cause of action; that no negli-
gence had been shown on the part of the defendant, and
that the deceased had not been shown to be free from con-
tributory negligence. This motion was granted, and the judg-
ment entered thereon has been affirmed in the Appellate
Division by a divided court.

It is contended on behalf of the defendant that the plaintiff
has failed to show how or where the injuries of Mrs. Fordham
were received. It must be confessed that the evidence upon
this branch of the case is slight. Mrs. Fordham's lips are
sealed in death, and she can no longer give us the circum-
stances under which she received her injuries. No witness
appears to have been present at the time, but shortly there-
after she was found by Mrs. Lavar down upon her hands and
knees trying to get up. As we have seen, she was well and
free from injury when she left her home; when found she
was suffering from the injuries to which attention has been
called. The law will not presume that she purposely cast her-
self upon the bridge and produced the injuries, and we must
look to the facts disclosed and the inferences that naturally
and reasonably should be drawn therefrom to determine the
cause of the injury. In order that we may have all of the facts
before us we repeat the chief portions of the testimony of
Mrs. Lavar: "I had been over to the village on the east side;
I think it was about the middle of the month of January, the
time they were fixing the bridge; I was going toward the
west side from the east about eight o'clock in the evening, and
met her about opposite the waterhouse on the sidewalk; I
don't know on which one of the bridges; it is one of the
bridges, so far as I know; she was about opposite the stone
waterhouse; when I first saw her she was trying to get up;
on her hands and knees like, and I helped her up; she moaned
and took on; said she had hurt her; I took hold of her and
helped her up; she was suffering in her knee and ankle, she
said; after I helped her up I braced her against the railing of
the bridge and rubbed her ankle and knee; I don't remember

now which knee it was; I made an examination of the sidewalk at the time; I got down and felt of the plank.— the condition it was in; it was up; we both got down; there was something about so high (showing about three inches), higher than the rest of the sidewalk, and that was close to where I found her; I did not notice whether it was the width of the sidewalk; it was about a finger high; I had never noticed it before, and had occasion to cross it frequently; I went across in the afternoon, and they were working on the bridge, and there were holes in the bridge; I suppose this plank I saw in the sidewalk was near where I saw the holes when I went across; I saw three or four or four or five holes when I went over the bridge in the afternoon; they were where this board or plank was, as near as I could judge; I stayed there with her about a half an hour; I saw no lights on the bridge at that time; there were no lights on the bridge; she complained of her leg where she had hurt her; I can't tell which leg it was; I went home and left her on the bridge." On the cross-examination she further stated: " She and I got down and examined this piece, and we examined it until we found out what it was; I went over the same place in the afternoon; those holes were close to the arch of the bridge, about in the middle of the sidewalk, I thought; I don't know that they were right next to the arch; they were in the middle of the sidewalk, as near as I know; that is my best recollection; I noticed these holes — four or five of them — when I went over in the afternoon; that is, in the whole length of the bridge; I don't know anything about the long bridge; I called it all one bridge; I am sure those holes run from the west side of the bridge to the east side; I said I rubbed her ankle and her knee; I did this after I got her a little easy; there were no electric lights; I saw no light; it was dark."

It is said that Mrs. Fordham might have been injured at some other place and that she might have walked upon the bridge afterwards, or that she might have slipped upon the ice or snow and fallen; but we are told by Mrs. Lavar that there was no ice or snow at that place. If the injury had

been received elsewhere we should hardly have expected a person suffering as this woman evidently was at that time, to get down to feel of the walk for the purpose of determining the cause of her injury. She found a plank lying on the sidewalk, which Mrs. Lavar says was three inches thick, and which other witnesses have described as two inches thick. This is all that she appears to have found. She did not make further search, evidently having satisfied herself as to the cause of her injury. What are the natural and reasonable inferences to be drawn from these facts? To our minds the first inference is very strong, almost amounting to a conviction beyond a reasonable doubt, and that is that she received her injury at that place and upon that plank. The next is not so strong, but the doctor tells us that the character of her injury was such as would be produced by falling and striking the knee upon the floor or some hard substance. Many persons in walking upon a smooth surface do not lift their feet more than two inches, and it is common experience that a person walking in the dark is very liable to stumble upon obstacles of this character that may be in his way. We think that upon the whole evidence the question was for the jury and that it might have found from the facts and the inferences drawn therefrom that the injury was produced by stumbling over this plank.

We are also of the opinion that the question of the negligence of the defendant, as well as the absence of contributory negligence on the part of the plaintiff's intestate, was for the jury. It might have found that the defendant was negligent in leaving the sidewalk over the bridge for the night in the condition described, without lights or signals to apprise the traveling public of the obstacles placed upon the walk, and that it was left in a dangerous condition, as demonstrated by the fact that other persons who crossed the bridge that night stumbled over this plank. The jury might also have found that the plaintiff's intestate was not chargeable with contributory negligence, for the reason that prior to that time the sidewalk across the bridge had been smooth and free from

planks lying upon the surface, over which she could stumble, and that she had not been apprised of the change.

The plaintiff attempted to show by several witnesses that on the evening of the injury they had stumbled upon the planks used to cover the holes in the sidewalk upon this bridge. So far as the plank upon which it is claimed that the plaintiff's intestate stumbled is concerned, we think the evidence was competent. (*Quinlan* v. *City of Utica*, 11 Hun, 217 ; affirmed, 74 N. Y. 603 ; *Gillrie* v. *City of Lockport*, 112 N. Y. 403, 407 ; *Pomfrey* v. *Village of Saratoga Springs*, 104 N. Y. 459, 469.)

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur, except Gray, J., not voting.

Judgment reversed, etc.