HARRIET MOSHIER, Respondent, *v.* THE CITY OF NEW YORK and THE DOCK CONTRACTOR COMPANY, Appellants.

Second Department, December 29, 1919.

Municipal corporations — negligence — injury to pedestrian by defect in sidewalk — failure to establish negligence of municipal contractor constructing subway — when negligence of city question for jury — stare decisis — prior decisions as to defects of certain dimensions in sidewalk — contributory negligence — knowledge of pedestrian that defect existed — ordinary care defined.

Where in an action against a municipal contractor and the city of New York to recover for injuries received by a pedestrian who caught her foot under the edge of a hole in a sidewalk adjacent to a street where the con-

tractor was constructing a subway, there is no proof whatever that the defect in the sidewalk was caused by the failure of the contractor to shore up and support said sidewalk while the work was in progress, that being the negligence alleged in the complaint, and it is sought merely to hold the contractor by proof of the circumstance itself without any positive proof from which the inference of negligence can be drawn, a nonsuit as to the contractor should have been granted.

Even if the act of the subway construction could be a competent cause of the break in the sidewalk, the inference that it was the cause requisite to cast liability upon the contractor is not the only inference which could be fairly and reasonably drawn from the fact, since defects in sidewalks may be caused by agencies other than the weakening of their earthen support.

The fact that in prior cases a city has been held not to be liable for injuries caused by a break of certain dimensions in a sidewalk does not create a precedent for a nonsuit in all cases of a defect of similar dimensions.

Where it appears that the break in the sidewalk, which had existed for about three months, was eight by four inches and about three or four inches deep, and it appears that the plaintiff caught her foot in the break which was so large that all of her toes were caught under its edge, the negligence of the city was properly a question of fact for the jury.

Although the plaintiff had passed over the street for several months with knowledge of the fact that the subway was under construction, the question of her contributory negligence was for the jury even though she may have had previous knowledge of the defect in the sidewalk. The fact that she did not at the instant have the defect in mind did not charge her with contributory negligence as a matter of law.

In such action it was proper for the court to charge as against the defendant city that the measure of the obligation upon the plaintiff was that of ordinary care commensurate with the danger to be apprehended and that the jury should say whether the plaintiff did or did not do that which a prudent or careful woman would have done or not have done under the circumstances.

" Ordinary " care defined. What is ordinary care in a given case is measured and determined by the circumstances of that case.

APPEAL by the defendants, The City of New York and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 13th day of June, 1919, upon the verdict of a jury for $8,000, and also from an order entered in said clerk's office on the 30th day of June, 1919, denying defendants' motion for a new trial made upon the minutes.

*William B. Carswell* [*William P. Burr, Corporation Counsel,* with him on the brief], for the appellant The City of New York.

*Walter L. Glenney* [*Everett W. Bovard* and *Bertrand L. Pettigrew* with him on the brief], for the appellant The Dock Contractor Company.

*Henry M. Dater* [*Jay S. Jones* and *R. M. S. Putnam* with him on the brief], for the respondent.

JENKS, P. J.:

The action is for negligence against the city of New York and its contractor who was building a subway in a city street. The plaintiff complains that when she was walking upon a sidewalk of that street her foot was caught under the edge of a hole in the sidewalk so that she fell to her injury.

At the close of plaintiff's case each defendant moved to dismiss the plaintiff for her contributory negligence and for her failure to prove negligence. The learned counsel for the plaintiff virtually conceded that the defendant contractor should prevail upon the second ground, but the court after doubt denied both motions · under exceptions. Thereupon the defendant contractor rested, but asked that it remain to sum up on the evidence so far adduced, and for a note on the record that it took no part in the examination or cross-examination of the witnesses called by the codefendant. The said defendant thereupon renewed its motion, which was denied under exception. We must consider the proof at that stage of the case only. (*Thomas* v. *Nassau Electric R. R. Co.*, 185 App. Div. 326.)

The negligence assigned to the defendant contractor is improperly performing its work of subway construction and imperfectly shoring up and supporting said sidewalk while the work was in progress. The bill of particulars specifies that the defendant contractor was " negligent and improperly performed its work in that, when it made the excavation for the subway at that point, it either neglected wholly to shore up and support the adjacent sidewalk, or else used such weak and insufficient shoring and supports that, as a result thereof, the flagstones of the said sidewalk sunk and declined towards the curb line, thus bringing about the conditions complained of."

The only proof of the defendant contractor's negligence is

by circumstance. Therefore, there must be positive proof of the facts from which the inference or conclusion is drawn, and it must appear that the inference sought is the only one which " can fairly and reasonably be drawn from these facts." (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90, 94. See *People* v. *Razezicz*, 206 id. 270.)

The sidewalk was made of cement. There is testimony that the defect was a hole or depression 8 by 4 inches and 3 or 4 inches deep where a piece had been broken out of the sidewalk. All of the proof as to the work of the defendant contractor is in the testimony of the plaintiff that she passed over the general location for 15 months; that she saw the subway being constructed in the middle of the street; that she knew in a general way that there was a subway in construction, that there were piles of dirt along there and all of the general indications that the street was disturbed; in the testimony of her son-in-law, Freiberg, that when he came to live in the neighborhood 15 months before, there was no subway work doing, that the sidewalk was then in fair condition, and in his testimony that " They opened the street up. * * * I have seen them digging there, etc." (*sic*). There is not the slightest proof, or even contention, that the defendant contractor *directly* disturbed or broke the sidewalk. What positive proof is there of work of subway construction that could indirectly have brought about this defect? There is none but that a subway was building, that a contractor had opened up the street and the contractor had been seen " digging there, etc." (*sic*). But the opening up of a street or digging therein in work of subway construction does not afford positive proof of a circumstance that permits an inference that either or both were the cause of this break. The testimony is that the defect had existed before this break for some three months. But there is not the slightest positive proof that there had been any excavation work that could cause any subsidence of the sidewalk that in turn could cause this defect. But even if work of subway construction that could be a competent cause of such a break had been established by " positive proof " (*Ruppert's Case, supra*), the inference that it *was* the cause, requisite to cast liability upon the defendant contractor, was not the " only one which

can fairly and reasonably be drawn from these facts." (Id.) We know from experience that breaks or defects in sidewalks like the one in question may be caused by agencies other than the weakening of its earthen support. There is not the slightest proof that the work had reached the stage when any shoring or support was even proper, or that the defendant contractor had undertaken to shore or to support the street as an incident to his work. I am of opinion that the exception to the motion to dismiss was well taken and that the plaintiff should have been dismissed as to the defendant contractor. (*Draper* v. *Interborough Rapid Transit Co.,* 124 App. Div. 357; 36 Cyc. 1535.)

The city contends that the defect, if any, was negligible by it. Sometimes in cases of this character counsel either forget that " Each case must necessarily depend upon its particular features " (*Butler* v. *Village of Oxford,* 186 N. Y. 450; *Terry* v. *Village of Perry,* 199 id. 84), or else deem that the " particular features " are confined to the dimensions of the defect. They contend that if they can resemble the dimensions of the defect to the dimensions of the defect in some other case they have found a precedent. But, *e. g., Hamilton* v. *City of Buffalo* (173 N. Y. 72) is not a precedent for a nonsuit solely for the reason that the defect in a case at bar was 34 inches long, 12 inches wide and about 4 inches deep, in the shape of a V, or of less dimensions. Of course, dimensions are pertinent to the question whether the city has used reasonable care and prudence to detect and to remedy a defect that should have been foreseen as dangerous.

The plaintiff could not give the dimensions of the break, but she testifies that her foot was caught in the break, that it was so large that all of her toes were caught under its edge. As I have said, the sidewalk was of cement, and there is evidence that there was a piece broken out of it, so there was a " hole " 8 by 4 inches and about 3 or 4 inches deep. Several of the defendant's witnesses admitted that there was a break or defect in the sidewalk, but no witness produced the exact dimensions thereof. Other witnesses, members of the police force, denied any defect. It is undisputed that the defect was the result of breakage that had impaired the original condition of the sidewalk, " which fact of itself sometimes

Second Department, December, 1919.       [Vol. 190

quite strongly suggests the inference of negligence." (*Butler v. Village of Oxford, supra,* 447.) There is a distinction between mere depressions in the surface of the street and defects therein that catch the foot or that cause the traveler to stumble over them. In *Moroney* v. *City of New York* (117 App. Div. 843; affg. opinion of Kelly, J., at Trial Term; affd., 190 N. Y. 560) Kelly, J., says: "In the case at bar the jury was told that if the accident was occasioned simply by reason of the fact that one stone was elevated over the other, simply because she tripped she could not recover; and that it was only in case they found that the aperture or hole existed and caught plaintiff's foot, holding it fast and causing her to fall, that this condition was not reasonably safe and that it had existed for the time charged; only on proof of these facts were they justified in deciding that the sidewalk was not reasonably safe. I am not prepared to say that a hole or aperture in a sidewalk into which the toe of a pedestrian's shoe may pass sufficiently far to hold the foot fast, requiring force to remove it, is such a minor defect that reasonable and prudent men will not differ as to whether accident should have been reasonably anticipated from its continuance." (See, too, the comments of the court in *Butler's Case, supra,* 449, 450, and in *Terry's Case, supra,* 85, upon *Durr* v. *N. Y. C. & H. R. R. R. Co.,* 184 N. Y. 320, and *Mullins* v. *Siegel-Cooper Co.,* 183 id. 129.) And there was evidence that the defect had existed for more than three months. I think that the question of the defendant city's negligence presented a question of fact for the jury. (See *Decker* v. *City of New York,* 147 App. Div. 691, and cases cited.)

The alleged contributory negligence was a question for the jury. For aught that appears, the street was open for travelers therein. One traveling the public street in the night time, in the absence of lights or any warning, " is entitled to assume that his way is normal and safe." (*Mullins* v. *Siegel-Cooper Co.,* 183 N. Y. 137.) The fact that the plaintiff had previous knowledge of the defect from which she might reasonably apprehend injury did not withhold the question of her own due care under the circumstances from the jury (*Palmer* v. *Dearing,* 93 N. Y. 7), nor could the plaintiff be charged with contributory negligence as matter of law in that she did not

at the instant have that defect in mind. (*Weed* v. *Village of Ballston Spa,* 76 N. Y. 329.)

After the main charge the court under exception denied an instruction that the plaintiff, knowing the existence of the hole, knowing that the subway was in process of construction, was bound to exercise more than ordinary care. There was evidence that the plaintiff had previous knowledge of the defect and of the subway work doing in the street. The court, in comment upon this request for instruction, said that the measure of the obligation upon the plaintiff was that of ordinary care, care commensurate with the danger to be apprehended; that the question in this case was, what would the prudent woman do under the circumstances; that the jury were to determine whether the plaintiff did or did not do that which a prudent and careful woman would have done or not have done under the circumstances; that if plaintiff did not measure up to the standard she must fail; if she did measure up to the standard she might recover. I think that the exception was not well taken.

The request assumes that there are degrees of care of which "ordinary care" is one. But the disposition made by the court is upon assumption that ordinary care was a definition of legal obligation in such cases of negligence. "Ordinary" means regular, normal, customary, usual. (New English Dict.) Ordinary care is, "in *law*, such care or diligence as men of common prudence, under similar circumstances, usually exercise." (Cent. Dict.) "Common, usual, reasonable: as ordinary-care." (Anderson L. Dict.) "Ordinary care. That degree of care which men of ordinary prudence exercise in taking care of their own persons or property. * * * It can only be determined by the circumstances of each particular case whether ordinary care was used." (Bouvier L. Dict. Rawle's 3d rev.) Perhaps the origin of the expression, at least so far as applicable to contributory negligence, may be found in the pioneer case (*Butterfield* v. *Forrester,* 11 East, 60), when BAYLEY, J., at Trial Term used the expression "ordinary care" repeatedly, and Lord ELLENBOROUGH, in review, used the term also in the sense that the learned court in the case at bar used it. Ordinary care contemplates always the standard of a person of average

care and prudence. But what is ordinary care in a case is measured and determined by the circumstance of that case. Thus FIELD, J., in the *Nitro-Glycerine Case* (15 Wall. 536), for the court says: " What would be extreme care under one condition of knowledge, and one state of circumstances, would be gross negligence with different knowledge and in changed circumstances. The law is reasonable in its judgments in this respect." SHAW, Ch. J., for the court in *Brown* v. *Kendall* (6 Cush. 296) says: " In using this term, ordinary care, it may be proper to state, that what constitutes ordinary care will vary with the circumstances of cases. In general, it means that kind and degree of care, which prudent and cautious men would use, such as is required by the exigency of the case, and such as is necessary to guard against probable danger. A man, who should have occasion to discharge a gun, on an open and extensive marsh, or in a forest, would be required to use less circumspection and care, than if he were to do the same thing in an inhabited town, village, or city." As to the proper use of the word " ordinary " as expressing by way of general definition an obligation required by law, which is relative according to the circumstances of each case, see *Steamboat New World* v. *King* (16 How. [U. S.] 474); *Railroad Co.* v. *Lockwood* (17 Wall. 382); *The Nitro-Glycerine Case* (15 id. 536); *Milwaukee, etc., R. R. Co.* v. *Arms* (91 U. S. 495); *Railroad Co.* v. *Jones* (95 id. 439, 441); *Grand Trunk Railway Co.* v. *Ives* (144 id. 408, 417); *Perkins* v. *New York Central Railroad Co.* (24 N. Y. 196, especially at 206, 207); *Smith* v. *New York Central Railroad Co.* (Id. 241); *Ernst* v. *Hudson River Railroad Co.* (35 id. 26, 27); *Lane* v. *Town of Hancock* (142 id. 510, 516).

But " ordinary " also has a meaning of " little merit," " inferior," " low," and it has been sometimes associated by law writers and judges with " care " in that sense, to be mistaken and quoted as if " ordinary care " was a degree. Context will often reveal the error of such misapplication.

I find an example of the distinction in a recent opinion of this court in its First Department. A very learned and accurate judge says: " The performance of the duty of ordinary care often requires the exercise of a very high degree of care when that is necessary to be commensurate with danger

apparent or to be apprehended." (*O'Brien* v. *New York Railways Co.*, 185 App. Div. 872.) Thus ordinary care is the generic term and it is considered properly to include a very high degree of care. Ordinary care is used as the general rule; very high degree of care describes the care in the particular case that meets the requirement of this general rule. (See, too, the opinion of PAGE, J., in *O'Brien's Case, supra,* 875 *et seq.,* as to the mistaking of the term.) To my mind, " due " or " reasonable " are preferable adjectives.

I advise that the judgment be modified so that the plaintiff be dismissed as to the defendant contractor, with costs, and with costs of the appeal, and be affirmed as to the defendant the City of New York, with costs.

The judgment and order should be affirmed as to the defendant the City of New York, with costs, and reversed and complaint dismissed as to the defendant the Dock Contractor Company, with costs and with costs of the appeal.

Present — JENKS, P. J., RICH, BLACKMAR, KELLY and JAYCOX, JJ.

Judgment and order unanimously affirmed as to the defendant the City of New York, with costs, and reversed and complaint unanimously dismissed as to the defendant the Dock Contractor Company, with costs and with costs of the appeal.