MARY RALEIGH, as Administratrix, etc., of DENNIS RALEIGH, Deceased, Respondent, v. WALKER D. HINES, as United States Director General of Railways, Operating the New York Central Railroad Company, Appellant.

First Department, January 14, 1921.

Carriers — action for death of truck driver who fell from seat to floor of gangway on ferryboat — burden of proof as to contributory negligence — evidence establishing decedent's freedom from contributory negligence — failure of defendant to maintain planking in gangway in reasonably safe condition — notice of defect — defective condition of planking not proximate cause of death of decedent — rule in death cases as to inferences in favor of plaintiff on issue of contributory negligence not applicable to issue of defendant's negligence.

In an action against a common carrier to recover for the death of plaintiff's intestate while a passenger on the defendant's ferryboat it appeared that the decedent fell from the seat of a truck which he was driving to the floor of the gangway and when found was dead.

*Held*, that by virtue of section 841-b of the Code of Civil Procedure (Laws of 1913, chap. 228) the defendant had the burden of proof as to contributory negligence; that the evidence warranted the jury in finding that the decedent was free from contributory negligence; that the defendant failed to perform his duty with respect to maintaining the planking in the gangway in a reasonably safe condition; that a proper inspection would have disclosed that it was loose or was becoming loose, and that the defendant was chargeable with notice thereof a sufficient length of time before the accident to impose upon him the duty of having it repaired:

But since the evidence fails to show any causal connection between the loose condition of the plank and the fall of the decedent from his seat onto. the surface of the gangway, such condition was not the proximate cause of the accident, and, therefore, the judgment in favor of the plaintiff should be reversed and the complaint dismissed.

The rule that in death cases inferences with respect to the conduct of the defendant may be drawn in favor of the plaintiff on the issue with respect to contributory negligence does not aid the plaintiff on the issue as to whether the defendant was guilty of negligence, which was the proximate cause of death.

APPEAL by the defendant, .Walker D. Hines, as United States Director General of Railways, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of May, 1920, upon the verdict of a jury for $30,000, and also from an order entered in said clerk's office on the same day denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

On June 22, 1920, John Barton Payne, as United States Director General of Railroads, and as agent under section 206 of the Transportation Act of 1920 (41 U. S. Stat. at Large, 461), was substituted in place of Walker D. Hines.

*William Mann* of counsel [*Alex S. Lyman*, attorney], for the appellant.

*Alfred M. Bailey* of counsel [*Solon Weit* with him on the brief; *Martin Bourke*, attorney], for the respondent.

LAUGHLIN, J.:

This· is an action against a common carrier to recover for the death of plaintiff's intestate, who on the night of the 16th ʹof October, 1918, was a passenger on the defendant's ferryboat *Rochester, en route* from Weehawken, N. J., to West Forty-second street, borough of Manhattan, New York. He was seated on a truck driving two teams and fell or was pulled by the lines or jerked or jarred from his seat to the floor of the gangway and when found was dead. The negligence charged was with respect to the condition of the planking forming the surface of the gangway. The accident happened

before the ferryboat was unfastened from the dock at Weehawken, and the appellant contends, among other things, that the accident did not occur within the territorial jurisdiction of the State of New York but in the State of New Jersey, and that since the New Jersey statute giving a cause of action for death through negligence was not alleged, there can be no recovery, and also that the verdict is excessive; but in the view we take of the case it is unnecessary to consider those points, for we think the plaintiff failed to show any causal connection beween the negligence with which the defendant is charged and the accident resulting in the death of the plaintiff's intestate, or, in other words, that any negligence shown on the part of the defendant was a proximate cause of the death of the decedent. It is only necessary, therefore, to consider the evidence relating to the accident and the death of the decedent.

Decedent was thirty-seven years of age. He had been married thirteen years and left a wife and three children. He was a sober, industrious man and an experienced driver of horses and had been in the employ of the Sheffield Farms Company for twelve or thirteen years. At the time of the accident and for a long time prior thereto, he worked nights, crossing on the ferry with the truck and teams from New York city to Weehawken, bringing from his employer's milk depot at Weehawken cases of milk for the New York market. The decedent was of a cheerful disposition and in his normal condition of good health, and the horses he was driving were docile and had been owned by the company and used for this purpose for two or more years and would stand without hitching. The evidence tends to show that the truck brakes were in working order and that the harnesses were in proper condition. Shortly after half-past ten, on the night in question, the decedent with the two teams and truck crossed on the ferry to Weehawken, and at his employer's milk depot, some 400 or 500 feet from the ferry landing, the truck was loaded with 250 cases of milk, each weighing about eighty pounds. He then drove to the ferry, where he was obliged to wait a few minutes for the ferryboat. He was seated on the middle of a seat across the top of the front of the truck, eight feet from the ground. The railing of the truck on either side projected

above the seat. A special officer employed by the defendant to regulate the traffic on the ferry concourse testified that he talked with the decedent while the latter was waiting for the boat, and that the horses were then standing still and the decedent appeared to be in his normal condition, and that he drove onto the ferryboat on a walk and into the starboard or right-hand gangway. A deckhand employed by the defendant on the ferryboat, who evidently had charge of regulating traffic on the boat, called by defendant, testified that the horses came down the bridge to the boat on a little trot and that he motioned to the decedent to take the down-town gangway, and that the horses slowed down to a steady walk and passed into the right-hand gangway; that both gangways were perfectly clear and that this was the only vehicle on the boat; that the decedent was on the driver's seat with the lines in his hands and that after he drove into the gangway he was going slow, but that as the horses were on the boat they " picked up the load and started to trot;" that he was about fifty feet from the Jersey end of the boat when the horses passed him and they were then " going slowly " pulling the load and that when they reached a point just beyond the door of the engine room he heard a noise not like as if they had stumbled, but which in answering leading questions in the affirmative he admitted sounded like a " rumbling and stumbling " of horses, and that just before that he heard a noise like the snap or crack of a whip, and that after the rumbling and stumbling he heard the horses begin to gallop and starting on a quick jump as if frightened; that he then ran down through the starboard gangway with a view to stopping the horses from going off the front end of the boat, and that when he reached them they appeared frightened and one of the horses — his testimony indicates one of the team next the wagon — was down and the truck was near the front end of the boat; that he then observed that the driver was not on the seat; that after quieting the horses and turning the leaders toward the Jersey shore, he went back into the gangway and found the decedent lying with his head on the combing, which is a plank raised about four inches at the edge of the gangway, on the south side of the boat, and his legs sticking out into the gangway at the

spot where he heard the horses begin to gallop, and that there was blood on the combing from a cut on the decedent's head, and he found a whip and a hat lying on the combing, but that he did not see the whip in the decedent's hand as he drove onto the boat; that the point where he found the body of the decedent was about ninety-five feet from the Jersey end of the boat. Other evidence showed that the boat was two hundred and one feet long and each gangway was eight feet, four inches in width and that the width of the boat at the widest part was sixty-four feet. One witness said that the whip was about thirty feet distant toward the Jersey shore from where the body of the decedent was found. Another witness testified that just after the accident " the horses were all mixed up in a tangle " and that the nigh or left horse was down and that he cut the lines to get the horse up. A diagram of the boat received in evidence shows that on one side there was a cabin for men, and on the other, one for women, and that between them were the two gangways, separated, in part, by an engine room about fifty-six feet long longitudinally of the boat, with a door opening onto the gangway into which the decedent drove about midway between the ends of the boat. There is no evidence as to whether this door was open or closed or that anybody came in or out of it or that it had any connection with the accident. It was referred to merely as locating the point of the accident. It was shown that there was blood in the gangway about opposite the door. There was further evidence showing that the appearance of the decedent's clothing and body indicated that a wheel of the wagon had passed over him. Testimony was given by one witness to the effect that the brake shoe on one side of the truck was loose, but there was other testimony to the effect that the truck was afterwards driven off the ferryboat at the New York end and down a hill, where the brakes were used, and that they were in proper working order. The evidence further showed that the ferryboat had an iron deck on which were laid lengthwise of the boat and bolted to the deck, yellow pine planks, three by six inches, and that the surface of the gangway consisted of oak planks, one and one-half inches in thickness and ten inches wide, running crosswise and nailed to the yellow pine planks, on which

they rested.   On the part of the defendant, testimony was given to the effect that the gangways had been resurfaced with new planks between July third and July twenty-ninth of that year and· that while the planks, in wearing, warp somewhat and curl up a little at the edge, they should last for two years; but another witness called by the defendant testified that the planks had remained the same since April of that year, at least, and his testimony further indicates that they appeared to him to have been the same for three years.   Testimony was offered in favor of the plaintiff sufficient to warrant a finding, which presumably was made by the jury, that a little beyond the engine room door from the Jersey end of the boat, one of these oak planks in the surface of the gangway was loose at both ends and that there was no nail holding it, and that when a man stepped on either end it went down about an inch and water came up between the planks and the other end went up an inch or so and that the planks were splintered and torn and showed marks of wheels and horses' hoofs, and that the heads of nails projected up above the surface and that some of the planks were a little higher than others at points where they were worn.   A porter in the employ of the defendant on the boat testified that he was in the women's cabin and heard a " rumbling and stumbling of horses " and went down to the end of the boat and saw one of the horses turned around and the deckhand asked him for a knife — it was evidently used in cutting the lines and hame straps in getting one of the horses up — but that he did not hear the crack of a whip and did not notice whether the decedent had a whip in his hand as he came onto the boat and did not see a whip.   Other evidence was offered by the defendant showing that frequent inspections of the planks were made, owing to the fact that they sometimes get loose and there is danger that some one may fall over them if they are not nailed down.   There was no evidence that the plank became displaced.

   This is the substance of all the material testimony and evidence relating to the issues of negligence on the part of the defendant and freedom from contributory negligence on the part of the decedent.   It being a death case, less evidence of freedom from contributory negligence was required even

under the common law where the burden of proof was on the plaintiff (*Sackheim* v. *Pigueron*, 215 N. Y. 62; *Irish* v. *Union Bag & Paper Co.*, 103 App. Div. 45; affd., 183 N. Y. 508; *Hoag* v. *N. Y. C. & H. R. R. R. Co.*, 111 id. 199), but by virtue of the provisions of section 841-b of the Code of Civil Procedure (as added by Laws of 1913, chap. 228) the defendant had the burden of proof on that issue. There can be no doubt but that the evidence warranted the jury in finding that the decedent was free from contributory negligence. Since the relation of passenger and carrier existed between the decedent and defendant, I am also of opinion that the jury were warranted in finding that the defendant failed to perform his duty with respect to maintaining the planking in the gangway in a reasonably safe condition. (*Schonleben* v. *Interborough Rapid Transit Co.*, 160 App. Div. 790.) Although there is no express evidence as to how long the plank had been loose, the jury might have found that a proper inspection would have disclosed that it was loose or was becoming loose, and that the defendant was chargeable with notice thereof a sufficient length of time before the accident to impose upon him the duty of having it repaired. The evidence, however, I think, fails to show any causal connection between the loose condition of the plank and the precipitation of the decedent from his seat onto the surface of the gangway. Although in death cases inferences with respect to the conduct of the defendant may be drawn in favor of the plaintiff on the issue with respect to contributory negligence, that rule extends no further and does not aid the plaintiff on the issue as to whether the defendant was guilty of negligence which was the proximate cause of the death. The learned counsel for the respondent attacks the veracity of the defendant's witness who testified that the first noise he heard was like the snap or crack of a whip. He realizes that if that is what frightened and caused the horses to stumble or start up suddenly, the recovery could not be sustained. The authorities in this jurisdiction nearest in point in favor of the plaintiff on the facts are *Sackheim* v. *Pigueron* (*supra*) and *Fordham* v. *Gouverneur Village* (160 N. Y. 541). In the former of those cases, negligence on the part of the defendant in failing to provide a proper appliance

for the fastening of a door of an elevator was clearly shown, and it was assumed that such negligence was a proximate cause of the death to recover for which the action was brought. The evidence tended to show that the decedent on approaching an elevator on the sixteenth floor of an office building, called, " Down, sixteen," and walked into the elevator shaft, the door of which had been left open because it rebounded when closed by the elevator operator, and thus met her death. The point of law decided by the Court of Appeals was that her contributory negligence was for the jury. In the latter case there was a plank sidewalk, forming a smooth surface on a bridge over a stream dividing the village. Part of the sidewalk was torn up by the village authorities in laying water pipes, and the openings were closed at night by laying planks from one to two inches in thickness over them and extending over the surface of the adjacent walk, and there was no light or barrier or warning for the protection of pedestrians. Plaintiff's intestate left home in the evening to go to the post office and her route was across the bridge. She was found on the sidewalk in the vicinity of one of these covered openings, on her hands and knees, endeavoring to get up, and stated that she had hurt herself, and after being helped up she got down again on her hands and knees and she and the person who assisted her felt about and found one of these planks. There was no ice or snow or other obstruction to account for the accident. The Court of Appeals in the opinion stressed the fact that the decedent herself thus endeavored to ascertain the cause of her fall, and that when she found the plank she ceased further efforts, indicating that she was satisfied that she stumbled on the plank. The court expressed the opinion that the reasonable inference was that she had received her injury in that place and upon the plank, and that the nature of her injuries presented a question for the jury as to whether or not she had not stumbled over the plank. The court had no doubt with respect to the negligence of the defendant, for it appeared that several others had stumbled on the plank the same evening. In the case at bar, however, the decedent died or was killed instantly, and we have no expression or act on his part to show the cause of his falling from his seat. The learned counsel for the appellant insists that it may be

reasonably inferred from the evidence that one of the horses stumbled on this plank and that one or all of the horses became frightened and started suddenly and pulled or jerked the decedent from his seat. The accident may have occurred from that cause; but horses sometimes stumble without meeting with an obstruction and there is no evidence that any of the horses stumbled at that point, and they may have been startled by the decedent cracking the whip, or he may have lost his balance and have fallen, coming in contact with one of them, or they may have been frightened by something else or in some other manner. In *White* v. *Lehigh Valley R. R. Co.* (220 N. Y. 131) it was held that where the cause of an accident is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, the plaintiff is not entitled to go to the jury; and that although the defendant may be guilty of negligence, unless the evidence fairly tends to establish that this negligence was the proximate cause of the death, such an action cannot be maintained. I think it cannot be said that this evidence reasonably points to the negligent condition of the plank as the cause of the fall of the decedent from his seat. It is pure speculation and conjecture.

I am of opinion, therefore, that the judgment and order should be reversed, with costs, and the complaint dismissed, with costs on the defendant's motion at the close of the evidence.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.