MARY A. HORTON and WALTER W. HORTON, as Administrators, etc., of JAMES W. HORTON, Deceased, Respondents, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Third Department, July 6, 1922.

Motor vehicles — action for negligence against railroad company arising out of collision between automobile and train at grade crossing — Railroad Law, § 53-a, changes former rule as to degree of care required in approaching grade crossing — reversible error for court to limit care required under said section to ordinary care — safe limit to speed under said section defined — court should instruct jury as to " safe limit " and as to " complete control."

Section 53-a of the Railroad Law, added by chapter 438 of the Laws of 1919, providing for the erection and maintenance of warning signs at a specified distance from a railroad crossing, and that " It shall be the duty of the driver of any vehicle using such street or highway and crossing to reduce speed to a safe limit upon passing such sign and to proceed cautiously and carefully with the vehicle under complete control," changes both the rule and the law from that which has heretofore existed and provides for a greater degree of care in approaching grade crossings than has heretofore obtained.

Accordingly, in an action for negligence against a railroad company arising out of a collision between an automobile and one of its trains at a grade crossing at which the view of approaching trains was badly obstructed, it was reversible error for the trial court in submitting the case to the jury, after reading the provision of statute above quoted, to specifically limit the care required of plaintiff's intestate to the " exercise of ordinary care."

*It seems,* that the " safe limit," within the meaning of section 53-a of the Railroad Law, to the speed of an automobile in approaching a railroad crossing is that speed at which the driver, as he arrives at a point where he can see an oncoming train, can stop his car, if necessary, before he reaches the track, and that the court should instruct the jury what is meant by a " safe limit " of speed and " with the vehicle under complete control." (Per VAN KIRK and H. T. KELLOGG, JJ.)

HINMAN, J., and COCHRANE, P. J., dissent, with opinion.

APPEAL by the defendant, The New York Central Railroad Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Albany on the 7th day of December, 1921, upon the verdict of a jury for $12,000, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

*Visscher, Whalen, Loucks & Murphy* [*Robert E. Whalen* of counsel], for the appellant.

*J. S. Carter,* for the respondents.

KILEY, J.:

This is what is known as a negligence action. (See Code Civ. Proc. § 1902 *et seq.;* now Decedent Estate Law, § 130 *et seq.,* as

added by Laws of 1920, chap. 919.)   The appellant owns and operates a branch of its system from Troy to Schenectady and was so operating it on the 29th day of May, 1921.   It runs in an easterly and westerly direction, it is crossed at grade, at Dunsbach Ferry station, by a highway running in a northerly and southerly direction from Cohoes to Dunsbach Ferry.   Dunsbach Ferry is a summer resort.   On May 29, 1921, the plaintiff's intestate was killed at this station by a freight train going east, at about nine-fifteen o'clock A. M. standard time.   He approached the crossing in his five-passenger Essex automobile, from the north toward the south. The complaint is the usual complaint in negligence actions and charges that defendant's negligence was the sole cause of plaintiff's death.   Defendant denies the charge of negligence and alleges, as a separate defense, that the deceased received the injuries from which he died by reason of his own negligence.   The trial of the action, upon the issues thus presented by the pleadings, resulted in a verdict of $12,000 for plaintiffs, which includes funeral expenses and the value of the automobile which was totally destroyed.   That the location of this accident is very dangerous is not denied by the appellant.   On the north side of this railroad the high embankment, the bushes, grass and weeds growing thereon, and other obstruction cut off the view of one approaching from the north for a considerable distance and to within ten or twelve feet of the northerly rail of the said road.   On the question of warning (blowing of whistle) the plaintiffs swore fourteen witnesses and the defendant swore fifteen witnesses; five of these had such relation to the defendant that they might be considered interested as that term is used in the trial of cases.   The examination of the evidence given by plaintiffs' witnesses on that subject shows that at least half was negative in character, and appellant urges that if such a condition was created, a finding by the jury in favor of the respondents was against the weight of the evidence.   The evidence in this case on the question of signal or whistle blowing differs materially from the evidence on that subject in *Matutinovich* v. *N. Y. C. R. R. Co.* (182 App. Div. 451) and *Capitula* v. *N. Y. C. R. R. Co.* (200 id. 247) in that some of the witnesses for the plaintiff gave positive testimony that the whistle did not blow, and that they were in a position to hear if it had been blown.   The jury was charged fully as to the force to be given to negative testimony, and under the circumstances obtaining here, and above referred to, I think the question was for the jury. (*Henavie* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 280; *Hintze* v. *N. Y. C. & H. R. R. R. Co.*, 149 App. Div. 217.)   The evidence in this case does not justify a finding that the rate of speed was over twenty-five miles an hour.   Negligence cannot be imputed to the

defendant on that feature alone.   The holding in *Phelps* v. *Erie R. R. Co.* (134 App. Div. 729) and *Young* v. *Erie R. R. Co.* (158 id. 14) to the effect that "It is not of itself a negligent act to drive a train over an ordinary highway crossing in the open country at full speed, be it ever so great," has coupled with it the assumption that the required warning was given.   The question of defendant's negligence was properly submitted to the jury and properly decided by the jury.   The defense of contributory negligence, the injury having resulted in death, must be alleged and proved by the defendant.   (Code Civ. Proc. § 841b, as added by Laws of 1913, chap. 228; now Decedent Estate Law, § 131, as added by Laws of 1920, chap. 919.)   That question was submitted to the jury and would have been considered properly submitted and the verdict of the jury thereon sustained by the evidence under conditions heretofore prevailing; but in this case, so far as I can find, for the first time, it is urged that the proper construction of section 53a of the Railroad Law will compel the holding that it was violated by plaintiffs' intestate and that such violation is a complete defense to this action. That section was added by chapter 438 of the Laws of 1919 and took effect May 5, 1919.   Said section provides for the erection and maintenance, at a distance of 300 feet each way from a railroad grade crossing, of warning signs of specified design and dimension.   Those signs were erected as required by statute near the approach to this crossing.   It is then provided in and by the same section, rules for the use of the streets, highways and crossings by drivers of vehicles as follows: "It shall be the duty of the driver of any vehicle using such street or highway and crossing to reduce speed to a safe limit upon passing such sign and to proceed cautiously and carefully with the vehicle under complete control."   The argument of the defendant that this section should be construed as it contends, and the reason for the law itself, is that the advent of automobiles has introduced into public travel, on streets and highways, a hazard that has not heretofore existed; that the property damage and loss of human life, with the advent of the automobile, have enormously increased over that of damage and death from any other kind of accident; that the rules making for safety on railroads are stringent within their field of operation; that it has to run its powerful engines and heavy cars on fixed rails in a fixed location; and that those approaching the crossing, in vehicles not so restricted, should be held to the strictest accountability in approaching such crossing. If the rule sought for by appellant is to obtain, the driver of a vehicle would have to stop at each crossing.   Had the Legislature intended such result it would have said so in language that would not admit of any doubt or confusion.   It could and would have said "and

stop before proceeding," or would have incorporated words of the same import into the section; in any event it is not the province of courts to legislate, thereby inserting into the section a vital provision it does not now contain. On the other hand, if the contention of the respondent is to prevail, viz., that this section is simply a codification of previously existing law, it serves no useful purpose; it would not change the rule nor the law for either the plaintiff or defendant in crossing cases founded upon negligence. It does change both the rule and the law from that which has heretofore existed; it provides for a greater degree of care in approaching grade crossings than has heretofore obtained. The trial court in submitting this case to the jury read the paragraph of section 53a above quoted, and specifically limited the care required of plaintiffs' intestate to the " exercise of ordinary care." This section calls for more than ordinary care on the part of the driver of a vehicle approaching a crossing. The jury should have been instructed that more than ordinary care was required. Appellant duly excepted to this charge; such exception presents reversible error. The judgment should be reversed and a new trial granted, with costs to abide the event.

VAN KIRK, J. (concurring):

This is a case having special importance because the public is deeply concerned. It is said a full half of the families in this State ride in automobiles. They are dangerous vehicles to the occupants and to those people or vehicles which come in contact with them. Their speed power is a great temptation to hurry, with expectation that the automobile can beat the train or trolley or another vehicle, as well as to impatience at any delay. Their speed and weight give powerful momentum and their weight obstructive inertia. So much so that one may wreck a train. In this respect the automobile is hardly less effective than the trolley car. The traveling public, whether on steel rails or on ordinary highways, is put in jeopardy by the use of automobiles. Rules have been made which require the trolley car to stop and its motorman to go forward and look before passing over a steam road crossing. Such a rule has not been made applicable to automobiles, but a rule applicable to them has been made recently by statute. (Railroad Law, § 53a, as added by Laws of 1919, chap. 438, effective May 5, 1919.) By this section the Legislature intended to add something to the care and cautoin formerly required of the driver of an automobile approaching a railroad grade crossing, where the warning sign 300 feet from the crossing has been placed. It has not applied in words the above rule fixed for trolley cars. Had it intended to it is naturally inferred that it would have done so. The rule that it has applied is this:

Third Department, July, 1922.                    [Vol. 202

"It shall be the duty of the driver of any vehicle using such street or highway and crossing to reduce speed to a safe limit upon passing such sign and to proceed cautiously and carefully with the vehicle under complete control." What is a safe limit? This must depend upon the circumstances. The purpose of the limit is to avoid the danger. The danger is from a fast approaching train, unseen and unknown. If the land be level, and free from obstruction to the view for a long distance, as one approaches the crossing, any moderate speed is a safe limit. Hearing is an unsafe protection; the best sense protection in the light is sight. The safe limit to speed in approaching a crossing is that speed at which the driver of an automobile, as he arrives at a point where he can see an on-coming train, when it is near enough to render crossing ahead of it dangerous, can stop his car if necessary before he reaches the track. It is futile to look when one cannot see. If he cannot see without stopping he must stop. Looking is worth while only when one can see. The statute of 1919 means something. I think the court should instruct what is meant by a "safe limit" of speed and "with the vehicle under complete control."

Applying this rule to this case I think the verdict should not stand. Had the plaintiff stopped and looked up this track, he would, so far as this record discloses the fact, have avoided the injury. There was error it seems to me in the charge of the court and insufficient evidence to sustain this verdict. I would disapprove of the finding that the deceased was not guilty of contributing to his injury.

H. T. KELLOGG, J., concurs.

HINMAN, J. (dissenting):

I cannot agree that there was error in the charge of the learned trial justice. The jury was not misinformed as to the law with reference to the duty of the plaintiffs' intestate in approaching the crossing in question. It seems to me that the law was made very plain to the jury and that the verdict must stand.

In instructing the jury with reference to the duty of the plaintiffs' intestate as bearing upon the question of his contributory negligence, the trial justice said:

"Now the law did not require from him an unreasonable thing. It didn't require him to look when he couldn't see. It didn't require him to listen when he couldn't hear. But when he came to a place approaching this crossing where he could see, then he should look. And when he came to this crossing at a place where he could hear, then he should listen. And if he failed to look, or he failed to listen, when he should have looked and when he should have listened,

then he did not exercise that degree of ordinary care and prudence required of him under the particular circumstances.

" Now there is another rule which controlled and regulated the conduct of Mr. Horton in approaching this crossing on this day in question.   Located 300 feet from the crossing on the right-hand side of the road was a sign which was placed there under and pursuant to section 53a of the Railroad Law of the State of New York. And the Legislature in its wisdom has laid down this rule of statutory law which governed the conduct of Mr. Horton in approaching this crossing on the day in question: ' It shall be the duty of the driver of any vehicle using such highway and crossing to reduce speed to a safe limit upon passing such sign, and to proceed cautiously and carefully with the vehicle under complete control.'

" That duty was incumbent upon Mr. Horton.   And if in the failure to perform that duty, his failure to perform it contributed to this accident, causing his death, then as a matter of law he was guilty of contributory negligence, and the plaintiffs in this action are not entitled to recover.

" The law in this State does not require a person approaching and passing over a railroad grade crossing to stop, look and listen, unless you find as a fact that Mr. Horton in this particular case, under the particular circumstances and in the exercise of ordinary care in the movement of his automobile on this day in question, should have stopped, looked and listened for the approach of this train, *or unless you find as a fact that in order for Mr. Horton to proceed cautiously and carefully with his automobile under complete control that it was necessary for him to stop as* well as look and listen in approaching and going over this crossing on the day in question."

It is to be noted that the counsel for the defendant made no specific requests to charge in relation to the duty of the plaintiffs' intestate and counsel simply excepted to certain portions of the charge as follows: " Mr. Whalen: I wish, if your Honor please, to except to the submission as a question of fact of the issue whether the plaintiffs' intestate on the occasion in question was guilty of contributory negligence.   The Court: Yes.   Mr. Whalen: Also to so much of your charge as states that Mr. Horton was bound to approach the crossing with the ordinary degree of care.   The Court: Ordinary degree of care under all the attendant circumstances. Mr. Whalen: Yes; to the use of the word ' ordinary ' in view of the peculiar statute.   The Court: Yes.   Mr. Whalen: Finally we except to the statement that under the law of the State of New York it was not incumbent upon Mr. Horton necessarily to stop before

he reached the crossing. The Court: I left that as a question of fact. Mr. Whalen: I understand."

It seems to me that it is for the jury to say whether under the circumstances of the particular case the plaintiffs' intestate did or did not comply with the provisions of the statute in question and that the trial court was justified in refusing to charge as a matter of law that it was the duty of the plaintiffs' intestate under this statute to stop before passing over the crossing in question.

Mr. Justice KILEY holds that the statute in question provides " for a greater degree of care in approaching grade crossings than has heretofore obtained," and that " the jury should have been instructed that more than ordinary care was required." The statute in question does not deal with degrees of care or general standards of care but provides specifically what acts must be done and what precautions must be taken by the driver of a vehicle approaching a railroad grade crossing. It seems rather idle to speculate as to what acts and vigilance would constitute a high degree of care and what acts and vigilance would constitute only ordinary care. Such speculation is not helpful. (*Moshier* v. *City of New York,* 190 App. Div. 111, 117.) In charging generally that the driver of a vehicle must exercise more than ordinary care or a high degree of care in approaching a crossing, it cannot be said that such an instruction would convey to the minds of the jury those acts and those acts only which are provided for in the statute.

Mr. Justice KILEY states that the trial court in submitting this case to the jury read the provisions of the statute " and specifically limited the care required of plaintiffs' intestate to the ' exercise of ordinary care.' " It does not seem to me that the trial court specifically limited the care required to " ordinary care." He said to the jury that the general standard of care to be exercised by a person approaching a railroad crossing is that of ordinary care in the circumstances of this particular case, but that the statute must also be complied with in order to be free from contributory negligence. That is a correct statement of the rule and there was no error in the charge.

I think the judgment and order should be affirmed and, therefore, I dissent.

COCHRANE, P. J., concurs.

Judgment and order reversed and new trial granted, with costs to the appellant to abide the event.