LOUISE BUDKA, an Infant, by JOSEPH BUDKA, Her Guardian ad Litem, Respondent, *v.* CITY OF SCHENECTADY, Appellant. (Action No. 1.)

HELEN BUDKA, Respondent, *v.* CITY OF SCHENECTADY, Appellant. (Action No. 2.)

JOSEPH BUDKA, Respondent, *v.* CITY OF SCHENECTADY, Appellant. (Action No. 3.)

Third Department, May 3, 1939.

*Arlen T. St. Louis, Corporation Counsel,* for the appellant.

*Harold A. Gordon,* for the respondents.

HILL, P. J. Appeals are taken from three judgments recovered against the city of Schenectady by the plaintiffs, one an infant in arms, by her father as guardian *ad litem,* for personal injuries,

the second by the mother of the infant, likewise for personal injuries, and the third by the father for expenses and loss of services.

On the afternoon of June 4, 1936, the mother, the plaintiff Helen Budka, carrying the infant plaintiff in her arms, was walking westerly along the north side of Front street intending to shop at a grocery store. When she had arrived within about two feet of the *locus in quo*, a manhole with its cover, an acquaintance greeted her from across the street, she faced southerly and conversed for a brief period, then turned westerly, took two steps, the heel of her left shoe caught in a hole beside the loose manhole cover, and she was thrown to the sidewalk, the infant underneath her. In the course of her fall, her body turned to the left, her right foot and leg went into the gutter and through a water drain in the street curb, from which some of the protecting bars were missing. The manhole, its cover, and the immediate area at the time of the injury were described as follows: A hole of the circumference usual for manholes had been cut and chiseled about in the center of a flagstone. There was no metal flange into which the cover fitted, but a groove into which the cover was supposed to fit had been cut and chiseled in the upper side of the stone around the aperture. A crack in the stone ran from the easterly part of the manhole. A witness describes it: " It was a wide space, and there was a crack or dent in the sidewalk running parallel with the street and winding up to the manhole and spreading out with a fairly large size opening into the flange of the manhole. * * * Q. Was the crack wider where it joined the manhole cover? A. Yes, sir, it was. Q. How wide would you say that opening or hole was that was made by this crack where it joined the manhole cover? A. Around about two or three or four inches." The witness also stated that the manhole cover was an inch and a half above the level of the sidewalk and the depth of the hole in the stone was about two and a half inches. Thus the bottom of the hole was four inches below the surface of the manhole cover, at the point where the plaintiff says her heel was caught. The jury could have found that because of the chipping of the stone around its entire circumference, the manhole cover was not stable, but moved under the foot of a pedestrain. Plaintiff Helen Budka attributes the injuries to the infant and to herself in part to the fact that her foot and leg went into the unguarded water drain in the curb, which was about two feet southerly from the manhole. There were issues of fact as to the condition and dimensions of these obstructions and defects. My recital is taken from the evidence most favorable to the plaintiffs, which seems proper, as the jury has found in their favor.

The recent cases cited by the appellant, *Smith* v. *City of Albany* (261 N. Y. 240) and *Griffin* v. *Town of Harrison* (268 id. 238) and

others, are distinguishable, as we have more than an abrupt depression in the sidewalk or street; there was a hole in which a person's heel could be caught and an effort to regain posture would be hindered by the unstable manhole cover upon which the ball of the foot would rest. Authorities more consonant with the situation are *Turner* v. *City of Newburgh* (109 N. Y. 301), where there was a loose stone in the crosswalk; *Moshier* v. *City of New York* (190 App. Div. 111; appeal dismissed because leave therefor had not been obtained, 228 N. Y. 612), in which there was a hole eight by four inches and about three or four inches deep; *Moroney* v. *City of New York* (117 App. Div. 843; affd., 190 N. Y. 560), where there was "a hole or aperture in a sidewalk into which the toe of a pedestrian's shoe may pass sufficiently far to hold the foot fast," and *Fordham* v. *Gouverneur Village* (160 N. Y. 541). The proof established the negligence of the city and plaintiffs' freedom from contributory negligence.

That the infant plaintiff was an idiot at the time of the trial is not disputed, and if that condition resulted from the accidental injuries, the city raises no question as to the amount of damages awarded. The cause of the idiocy was vigorously contested, the city's witnesses saying that it was congenital, the plaintiffs' that it was caused by the fall underneath its mother. Defendant argues that the judgment should be reversed for error of the trial court in excluding the records of the hospital where the infant plaintiff was born. Doubtless these records were admissible under section 374-a of the Civil Practice Act, and were material upon the issue as to the cause of idiocy. The custodian of these records was called as a witness. After some questions, defendant's counsel offered the records in evidence. Plaintiffs' counsel objected and the court said, " Sustained for the present." The counsel for the city continued asking questions intended to make the exhibit admissible, but after a brief period stated, " I will withdraw this witness for the time being. Will you please step down." I do not find that later in the trial the records were again offered, and the physicians upon each side were examined at length as to their contents and the inferences to be drawn from the facts recited therein. I feel that error was committed, but that the attorney for the defendant did not continue to urge admissibility, possibly abandoning the idea because all the relevant facts went before the jury during the examination of the physicians.

The judgments should be affirmed, with costs of one appeal.

McNAMEE, CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Judgments and orders affirmed, with costs in one appeal.